47 P.3d 336

**STATE of Hawai‘i, Plaintiff–Appellant,**

v.

**William ENTREKIN, Defendant–Appellee.**

No. 24278.

Supreme Court of Hawai‘i.

May 9, 2002.

As Corrected May 21 and June 5, 2002.

Tracy A. Jones, deputy prosecuting attorney, on the briefs, for the plaintiff-appellant, State of Hawai'i.

James S. Tabe, deputy public defender, on the briefs, for the defendant-appellee, William Entrekin.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i (the prosecution) appeals from the findings of fact, conclusions of law, and order of the district court of the second circuit, the Honorable Douglas H. Ige presiding, granting the defendant-appellee William Entrekin's motion to suppress the results of a blood test. Specifically, the prosecution argues that the district court erred in granting Entrekin's motion to suppress because the blood test was authorized by Hawai'i Revised Statutes (HRS) § 286–163 (Supp.2000).[1] The

---

1. HRS § 286–163 was the "mandatory testing" provision contained within part VII of HRS ch. 286 (1993 & Supp.2000), the so-called "implied consent statute," which governed the administration of breath, blood, and urine tests of drivers suspected of driving under the influence of drugs or alcohol. HRS § 286–163 provided in relevant part:

(a) Nothing in [part VII] shall be construed to prevent the police from obtaining a sample of breath, blood, or urine as evidence of intoxi-

cation or influence of drugs from the driver of any vehicle involved in a collision resulting in injury to or the death of any person.

. . . .

(c) In the event of a collision resulting in injury or death, and the police have probable cause to believe that a person involved in the incident has committed a violation of [HRS §§ ] 707–702.5, 707–703, 707–704, 707–705, 707–706, 291–4, or 291–7, the police shall request that a sample of blood or urine be recov-

prosecution contends that the district court misconstrued HRS § 286–163 to authorize mandatory blood tests only in cases of motor vehicle collisions in which someone other than the driver of the vehicle from whom the police are seeking to obtain a blood sample is injured or killed.

As we discuss more fully *infra*, we agree with the prosecution and hold that HRS § 286–163, by its plain language, authorizes the police to obtain a blood sample from the driver of any vehicle involved in an accident resulting in an injury to or the death of any person, including the driver himself or herself, so long as the police have probable cause to believe that the driver is driving under the influence of alcohol or drugs.

Accordingly, we vacate the district court's order and remand the case for further proceedings consistent with this opinion.

## I. *BACKGROUND*

As noted, this case concerns the scope and application of HRS § 286–163, the mandatory testing provision set forth within part VII of HRS ch. 286—the "implied consent" statute, *see supra* note 1. The implied consent statute deems any person who operates a motor vehicle or moped on the public highways of the state to have consented "to a test

or tests . . . of [their] breath, blood, or urine" for the purpose of determining whether they are driving under the influence of drugs or alcohol (DUI). *See* HRS § 286–151 (Supp. 2000).[2] The statutory scheme, however, also permits drivers to withdraw their consent, *see* HRS § 286–151.5 (Supp.2000),[3] except in cases in which HRS § 286–163 applies, *see supra* note 1.

The following facts were adduced at a non-evidentiary, stipulated hearing on Entrekin's motion to suppress the results of a blood test. On November 5, 2000, at approximately 9:00 a.m., Entrekin was involved in a single-vehicle collision. Entrekin's auto crossed the center lane marking of Haleakal;a Highway, sideswiped the guardrail along the opposite side of the highway, and then crossed back into his original lane of travel and collided with a dirt embankment. Maui Police Department (MPD) Officer Donald Nakooka arrived at the scene shortly thereafter and observed a 1985 Nissan two-door sedan, with damage to the front of the vehicle, blocking the southbound lane of travel. He observed Entrekin standing nearby on the shoulder of the road. Entrekin identified himself as the driver and sole occupant of the vehicle involved in the accident. Paramedics subsequently arrived at the scene of the accident,

ered from the driver or any other person suspected of committing a violation of [HRS §§ ] 707–702.5, 707–703, 707–704, 707–705, 707–706, 291–4, or 291–7.

(d) The police shall make the request under subsection (c) to the hospital or medical facility treating the person from whom the police request that the blood or urine be recovered. . . .

The implied consent statute, including the mandatory testing provision, was recodified as HRS ch. 291E, part II, effective January 1, 2002, and amended in respects not pertinent to the present matter. *See* 2000 Haw. Sess. L. Act 189, § 23 and 28 at 407–30, 432; 2001 Haw. Sess. L. Act 157, §§ 11 and 12 at 382–84.

2. HRS § 286–151 provided in relevant part:

(a) Any person who operates a motor vehicle or moped on the public highways of the State shall be deemed to have given consent, subject to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine, as applicable.

(b) The test or tests shall be administered at the request of a police officer having probable cause to believe the person driving or in actual physical control of a motor vehicle or moped upon the public highways is under the influence of intoxicating liquor or drugs, or is under the age of twenty-one and has a measurable amount of alcohol concentration, only after:

(1) A lawful arrest; and

(2) The person has been informed by a police officer of the sanctions under part XIV and [HRS §§ ] 286–151.5 and 286–157.3.

HRS § 286–151 has been repealed and reenacted, in amended form, as HRS § 291E–11, *see supra* note 1.

3. HRS § 286–151.5 provided in relevant part: "If a person under arrest for driving after consuming a measurable amount of alcohol, pursuant to section 291–4.3, refuses to submit to a breath or blood test, none shall be given, except as provided in section 286–163[.]" HRS § 286–151.5 has been repealed and reenacted, in amended form, as HRS § 291E–15, *see supra* note 1.

but Entrekin claimed to be without injury or need of medical attention.

Officer Nakooka detected an odor of liquor on Entrekin's breath during the course of his investigation and requested that Entrekin perform field sobriety maneuvers. Entrekin thereupon claimed that he was not feeling well due to a neck strain caused by the accident. While Entrekin sat in the driver's seat of his auto and conversed with the paramedics, MPD Officer Scott Louis noticed a small amount of green vegetation resembling marijuana on the floor of the vehicle in front of the driver's seat. Officer Louis recovered the vegetation. The paramedics transported Entrekin to Maui Memorial Medical Center (MMMC), where he was admitted for treatment of his injury.

Based on his investigation, Officer Nakooka concluded that Entrekin had been involved in a collision resulting in an injury and that there was probable cause to believe that Entrekin had been driving under the influence of alcohol, in violation of HRS § 291-4 (Supp.2000).[4] Therefore, Officer Nakooka called the MPD dispatcher and requested that a police officer attend MMMC to ensure that a blood sample was obtained from Entrekin.

MPD Officer Clifford Pacheco arrived at MMMC and requested medical personnel to obtain a sample of Entrekin's blood. Officer Pacheco explained to Entrekin that he could either cooperate with the nurse drawing the blood sample or be restrained. Entrekin allowed a nurse to draw a sample of his blood at 11:46 a.m. without resistance. Entrekin was not arrested prior to the blood extraction. The attending police officers did not give Entrekin a choice (1) as to whether to take a blood test, or (2) between taking a blood test or a breath analysis test. Finally, the attending police officers never informed Entrekin of the consequences of refusing to be tested.

On March 13, 2001, the prosecution charged Entrekin by amended complaint with driving under the influence of intoxicating liquor, in violation of HRS § 291-4, *see supra* note 4, inattention to driving, in violation of HRS § 291-12 (Supp.2001),[5] and promoting a detrimental drug in the third degree, in violation of HRS § 712-1249(1) (1993).[6]

On April 3, 2001, Entrekin filed a motion to suppress the results of his blood test and the evidence seized from his vehicle. Entrekin claimed that his blood was extracted in violation of HRS ch. 286, as well as the United States and Hawai'i and Constitutions. Specifically, Entrekin argued that the testing of his blood violated HRS § 286-151, *see supra* note 2, because the police officers (1) lacked probable cause to believe that he was driving under the influence of intoxicating liquor, (2) did not lawfully arrest him prior to administering the blood test, (3) neglected to inform him of his rights under HRS ch. 286, and (4) failed to give him a choice between submitting to blood or breath analysis for purposes of determining his blood alcohol content (BAC). Moreover, Entrekin argued that the police had failed to conform to the mandates of HRS § 286-163, *see supra* note

4. HRS § 291-4 provided in relevant part:
 (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
 (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per two hundred ten liters of breath.
 The offense of operating a vehicle under the influence of an intoxicant was recodified as HRS § 291E-61, effective January 1, 2002, and amended in respects not pertinent to the present matter. *See* 2000 Haw. Sess. L. Act 189, §§ 23 and 30 at 425-26, 432; 2001 Haw. Sess. L. Act 157, § 25 at 397-98.

5. HRS § 291-12 provides:

 Whoever operates any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than thirty days, or both.

6. HRS § 712-1249 provides in relevant part that "[a] person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possess any marijuana or any Schedule V substance in any amount."

1, because they had not received "unsolicited evidence from a health care professional," obtained in the course of treatment, that Entrekin's BAC exceeded the legal limit.

The prosecution filed memoranda in opposition to Entrekin's motion on April 12, 2001, and, on April 18, 2001, the district court held a non-evidentiary hearing on stipulated facts. The prosecution argued that the police were authorized to request the extraction of Entrekin's blood pursuant to HRS § 286–163, *see supra* note 1, because: (1) the statute mandated blood tests of drivers involved in motor vehicle accidents involving an injury to or death of "any person," so long as the driver is suspected, *inter alia*, of DUI; (2) Entrekin was involved in an accident in which he claimed to have been injured and was, in fact, subsequently admitted to a hospital for treatment; and (3) the police officers had probable cause to believe that Entrekin had been driving under the influence of alcohol, based on the odor of liquor that Officer Pacheco detected on Entrekin's breath and the fact that Entrekin was involved in an inexplicable single-vehicle accident. During the hearing, Entrekin withdrew his claim that the police lacked probable cause to believe that he had been DUI.

On May 16, 2001, the district court granted Entrekin's motion to suppress the results of his blood test and entered the following relevant conclusions of law:

1. . . . Officer Donald Nakooka had probable cause to believe that [Entrekin] was operating the motor vehicle involved in a collision, which caused injury to himself, while under the influence of intoxicating liquor, in violation of H.R.S. section 291–4.

2. A D.U.I suspect must be adequately informed of the sanctions for refusal to submit to testing, H.R.S. section 286–151, *Gray v. Administrative Director of the Court*, 84 Hawai'i 138, 931 P.2d 580 (1997), *State v. Wilson*, 92 Haw[ai'i] 45, 987 P.2d 268 (1999).

3. The forcible blood draw performed after the motor vehicle collision was pursuant to H.R.S. section 286–163.

4. The language of H.R.S. section 286–163 is vague and ambiguous, as section (c) does not address with specific language to whom the injury or death must occur for the section to apply.

5. The court finds in reading the legislative history of H.R.S. sections 286–151 and 286–163 that the legislature intended that there must be injury to another person for section 286–163 to apply.

6. The language of H.R.S. section 286–163 must be consistent with the other provisions of Part VII, H.R.S. Chapter 286 on Alcohol and Highway Safety. . . .

7. In order for H.R.S. section 286–163 to be read consistently with H.R.S. section 286–151 and H.R.S. chapter 286, Part XIV, and *State v. Wilson*, the court concludes that the application of H.R.S. section 286–163 must be limited to cases in which there is injury to another person or to a driver who is unable to knowingly and intelligently consent to or refuse a chemical alcohol test because of the injury to the driver;

8. The court concludes that the police acted beyond the scope of their authority when they requested the forcible draw of [Entrekin's] blood pursuant to H.R.S. 286–163(c) to determine his alcohol content at that time.

The prosecution filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

### A. Conclusions of Law

■ This court reviews the district court's conclusions of law (COLs) *de novo* under the right/wrong standard. *Child Support Enforcement Agency v. Roe*, 96 Hawai'i 1, 11, 25 P.3d 60, 70 (2001). "Under this . . . standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it. . . . Thus, a[COL] is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Kane*, 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998).

### B. Statutory Interpretation

■ We review the circuit court's interpretation of a statute *de novo*. *State v. Pacheco*, 96 Hawai'i 83, 94, 26 P.3d 572, 583

(2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> ... [T]his court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993).

*Id.* at 94–95, 26 P.3d at 583–84 (quoting *State v. Valentine,* 93 Hawai'i 199, 204–205, 998 P.2d 479, 484–85 (2000)) (some citations omitted) (some ellipsis points and brackets added and some in original).

## III. *DISCUSSION*

A. *The District Court Erred In Suppressing The Results Of Entrekin's Blood Test.*

 1. *HRS § 286–163 authorizes the police to obtain a blood sample of a driver involved in a collision resulting in an injury to or death of any person, including the driver.*

◼ The prosecution argues that the district court erred in concluding that HRS § 286–163, *see supra* note 1, did not authorize the police to obtain a blood sample from Entrekin without his consent. The prosecution notes that the plain language of HRS § 286–163 authorizes the police to obtain a blood sample from "the driver of *any* vehicle involved in a collision resulting in injury to or the death of *any* person" (emphases added) and contends that a driver who is injured in a single-vehicle accident falls within the foregoing description, regardless of whether someone other than the driver is injured or killed. Moreover, the prosecution argues that a literal interpretation of HRS § 286–163 is consistent with the legislature's intent to provide for mandatory testing in the most egregious cases of DUI—*i.e.,* cases involving accidents resulting in injuries or death—and to prevent the drivers involved from avoiding tests of their BAC by seeking medical treatment.

Entrekin argues that the term "any person," as set forth in HRS § 286–163, is vague and ambiguous, because reasonable minds might disagree as to whether "any person" means "any person" or "another person." Consequently, Entrekin contends, the statute does not clearly identify who must suffer an injury or death in order to authorize mandatory blood testing. Alternatively, Entrekin argues that a literal interpretation of HRS § 286–163 produces an absurd result, inasmuch as there is no legitimate reason to revoke the rights generally afforded drivers pursuant to the implied consent statute—namely, the right to refuse a breath, blood or urine test, pursuant to HRS § 286–151.5 and its progeny, *see supra* note 3—if the only person injured or killed in a vehicular collision is the driver suspected of DUI. In either case, Entrekin, like the prosecution, urges us to look to the legislative history of HRS § 286–163 for guidance. Unlike the prosecution, however, Entrekin argues that the legislature intended only to require mandatory testing of drivers who could potentially be prosecuted for crimes more serious than DUI, because someone other than the driver to be tested was injured or killed.

◼ We agree with the prosecution that the plain and unambiguous language of HRS § 286–163 authorizes police officers to obtain breath, blood, or urine samples of the driver of *any* vehicle involved in a collision in which *any* person is injured, including the driver, so long as the police have probable cause to believe that such samples will tend to estab-

lish one or more of the offenses enumerated in HRS § 286–163(c).

As indicated *supra* in note 1, HRS § 286–163 provides in relevant part that "[n]othing in [the implied consent statute] shall be construed to prevent the police from obtaining a sample of breath, blood, or urine as evidence of intoxication or influence of drugs from the driver of *any* vehicle involved in a collision resulting in injury to or the death of *any* person." (Emphases added.) Interpreted literally, "any person" means "any and all persons." *See Bragg v. State Farm Mutual Automobile Ins. Co.*, 81 Hawai'i 302, 305–06, 916 P.2d 1203, 1206–07 (1996) (construing "any person," as employed in HRS § 431:10C–304 (1993), which requires insurers to provide no-fault insurance benefits to "any person" injured in a motor vehicle accident, according to its plain language to mean, literally, "any person"); *Mabe v. Real Estate Comm'n*, 4 Haw.App. 552, 670 P.2d 459 (1983) (construing "any person," as employed in HRS § 467–16 (1976), which permits recovery by "any person" damaged by the fraud, misrepresentation, or deceit of a licensed real estate broker or salesperson, literally and unambiguously to mean "any person"). *Cf. Honolulu Advertiser, Inc. v. Takao*, 59 Haw. 237, 239, 580 P.2d 58, 61 (1978) (construing the phrase "any party," as it appears in HRS § 606–12, which, at the time, authorized court reporters to "furnish a transcript of any of his [or her] notes ... upon the request of any party," to mean "any person who seeks the transcript for a

legitimate and proper purpose"). Thus, the plain language of HRS § 286–163 authorizes the police to obtain "a sample of breath, blood, or urine as evidence of intoxication or influence of drugs from the driver of *any* vehicle involved in a collision resulting in injury to or the death of *any* person [at all ]." (Emphases added.)

Although we ground our holding in the statute's plain language, we nonetheless note that its legislative history confirms our view. *Cf. Crichfield v. Grand Wailea Co.*, 93 Hawai'i 477, 488–89, 6 P.3d 349, 360–61 (2000) (reviewing legislative history to confirm court's holding based on statute's clear and unambiguous language); *State v. Ramela*, 77 Hawai'i 394, 396 n. 3, 885 P.2d 1135, 1137 n. 3 (1994) ("Although not necessary to our analysis, we note that the legislative history underlying [the statute] confirms the correctness of our analysis."). Entrekin and the prosecution reach different conclusions from the legislative history, in part, because Entrekin focuses on the legislature's intent when it first enacted HRS § 286–163 in 1981, *see* 1981 Haw. Sess. L. Act 67, § 3 at 101, while the prosecution focuses on the legislature's intent when it amended HRS § 286–163 in 1995, *see* 1995 Haw. Sess. L. Act 197, § 1 at 372–73.[7] Entrekin contends that the legislature enacted HRS § 286–163 to prevent drivers who might potentially be prosecuted for offenses more serious than DUI, such as negligent homicide, from using the implied consent statute to withhold evidence of their BAC.[8] Thus, he argues, the legisla-

---

7. 1981 Haw. Sess. L. Act 67, § 3 at 101, provided that "[n]othing in this part shall be construed to prevent the police from obtaining a sample of breath or blood as evidence of intoxication from the driver of any vehicle involved in an accident resulting in injury to or death of any person." 1995 Haw. Sess. L. Act 197, § 1 at 372–73, amended HRS § 286–163 in relevant part by adding the following:

 ... In the event of a collision resulting in injury or death, and the police have probable cause to believe that a person involved in the incident has committed a violation of section 707–702.5, 707–703, 707–704, 707–705, 707–706, 291–4, or 291–7, the police shall request that a sample of blood be recovered from the driver or any other person suspected of committing a violation of section 707–702.5, 707–703, 707–704, 707–705, 707–706, 291–4, or 291–7. The police shall make this request to

the hospital or medical facility treating the person from whom the police request that the blood be recovered....

8. Entrekin relies upon certain statements of the conference committee considering Senate Bill No. 568, which became Act 67:

 Your Committee finds that the existing law has been interpreted to apply to all types of arrests that involve motor vehicles since the statute does not specifically state that the implied consent applies only to motorists arrested for driving under the influence of alcohol. Consequently, all persons have been held to have the right to either take or refuse to submit to a blood or breath test. This often results in an arrestee refusing to submit to a blood or breath test, thereby withholding evidence of drunkenness which may be essential to a conviction of the more serious offense of negligent homicide...

ture intended only to require mandatory testing if someone other than the driver to be tested was injured or killed in an accident—a factual predicate to prosecution for an offense more serious than DUI.

Entrekin's construction of the legislature's original intent may be correct, but the fact remains that the legislature has significantly revised HRS § 286-163 since its original enactment and has expressed itself accordingly. Specifically, the legislature substantially expanded HRS § 286-163 in 1995, by way of Act 197, in order to amplify upon the procedure for obtaining blood samples pursuant to a mandatory test, *see supra* note 7. Three of the four committees reviewing House Bill 1491, which became Act 197, stated that "[t]he purpose of this bill is to ensure that evidence is safely obtained *to aid in the conviction of persons suspected of driving under the influence of intoxicating substances* [.]" *See* Hse. Stand. Comm. Rep. No. 848, in 1995 House Journal, at 1347 (emphasis added); Sen. Stand. Comm. Rep. No. 971, in 1995 Senate Journal, at 1195 (same); Sen. Stand. Comm. Rep. No. 1302, in 1995 Senate Journal, at 1320 (same). Moreover, the 1995 House Committee on Transportation stated:

The purpose of this bill is to ... [s]treamline the procedure *for convicting an injured intoxicated driver of driving under the influence* (DUI)....

....

... *[C]urrently[,] when an injured driver is taken to a medical facility, even though there is evidence of intoxication, frequently no blood alcohol test is administered and the driver is released without being arrested for DUI.* In 1994, none of the 56 hospitalized, alcohol-impaired drivers were convicted of DUI. *These drivers can arguably be considered the most dangerous, since they have been involved in an accident. However, these injured drivers do not fall under the current implied consent law because they are not under arrest and therefore can refuse a blood alcohol test without recourse.*

*Your Committee further finds that many intoxicated drivers are feigning in-*

*jury to escape the blood alcohol test.* Although probable cause exists for police to request a blood test (because of what is observed on the scene, i.e. open container, appearance of driver, the collision itself), *there is no consequence if the driver refuses a blood test because the driver has not been arrested. The police may have probable cause to support an arrest of the driver based on observations made at the scene, but do not do so because if an arrest is made, the police must take custody of the arrestee which is problematic when the person is receiving medical treatment.*

Thus, it is apparent that *numerous intoxicated drivers are escaping the blood alcohol test by slipping through a loophole in the present statutory laws.* Emergency room physicians see this happening more frequently.

Hse. Stand. Comm. Rep. No. 392, in 1995 House Journal, at 1172 (emphases added). HRS § 286-163, as amended by Act 197, *see supra* note 7, unequivocally reflects the foregoing legislative concerns by expressly including DUI offenses (HRS §§ 291-4 and 291-7) among those triggering the application of HRS § 286-163. Moreover, neither in the amended statute nor in the legislative history did the legislature suggest that mandatory testing applied only when someone other than the driver of a vehicle involved in a collision was injured or killed. Indeed, such a construction would be inconsistent with the legislature's expressed intent that drivers be prosecuted for DUI crimes. Consequently, if we were to construe the term "any person," as it appears in HRS § 286-163(a) (Supp.2000), to mean "any person other than the driver," we would be failing to give the statutory provision the effect that the legislature clearly intended.

Finally, Entrekin's contention notwithstanding, we find nothing absurd in the legislative revocation of the protections otherwise afforded by the implied consent statute in the case of drivers involved in collisions resulting in injury or death, even if only with respect

Sen. Conf. Comm. Rep. No. 7, in 1981 Senate Journal, at 902.

to themselves.[9] As the legislature itself pointed out, drivers involved in vehicular collisions while DUI are among the most dangerous. It is therefore eminently reasonable for the legislature to have facilitated the prosecution of such drivers for DUI crimes by dispensing with the usual rights and protections afforded drivers by the implied consent statute.

Accordingly, we hold that the district court erred in ruling that HRS § 286–163 was inapplicable to the present matter on the basis that Entrekin was the only person injured as a result of the vehicular accident in which he was involved. We further hold that HRS § 286–163 applies to drivers injured or killed in a single-vehicle collision in which no other person is injured.

> 2. *The police are not required to arrest a driver prior to administering a mandatory blood test pursuant to HRS § 286–163.*

Entrekin argues that, even if we hold that HRS § 286–163 applies to single-car accidents in which only the driver of the vehicle is injured, the police are nevertheless required, pursuant to HRS § 286–151(b)(1), *see supra* note 2, to arrest the driver lawfully before administering a mandatory blood test. Thus, Entrekin urges that, because the police did not arrest him before obtaining a sample of his blood, the district court did not err in granting his motion to suppress the results of the blood test. Specifically, Entrekin appears to assert that, absent an arrest, a blood extraction—whether based on "implied consent" or no consent—is both without statutory authority and violative of the Hawai'i and United States Constitutions.

The prosecution counters that HRS § 286–163 expressly operates as an exception to the arrest requirement set forth in HRS § 286–151(b)(1), based on the section's plain language and legislative history, as well as the language of certain other provisions of the implied consent statute that refer to HRS § 286–163. Consequently, the prosecution contends, the police are not required to satisfy any of the prerequisites set forth in HRS § 286–151, including the lawful arresting of the driver, prior to obtaining a breath, blood, or urine sample pursuant to HRS § 286–163. The prosecution does not address Entrekin's constitutional arguments.

We hold that HRS § 286–163 operates as an exception to HRS § 286–151, which generally requires the police lawfully to arrest the driver prior to administering a blood test. We further hold that a mandatory blood test, pursuant to HRS § 286–163, absent an arrest, violates neither the United States nor the Hawai'i Constitution, so long as the police have probable cause to believe that the driver has committed one of the enumerated offenses and that the driver's blood contains evidence of intoxication or drug influence, exigent circumstances excuse a warrant, and the test is performed in a reasonable manner.

> a. *The police are not required to comply with the prerequisites to a breath, blood, or urine test contained in HRS § 286–151 prior to obtaining a breath, blood, or urine sample pursuant to HRS § 286–163.*

As we noted *supra* in note 2, HRS § 286–151 authorizes a breath, blood, or urine test, pursuant to the implied consent statute, "only after ... [a] lawful arrest[ ] and ... [t]he [arrested] person has been informed by a police officer of the sanctions [imposed] under part XIV and [HRS §§ ] 286–151.5 and 286–157.3." In addition, HRS § 286–151.5 provides that, "[i]f a person ... refuses to submit to a breath or blood test, none shall be given, except as provided in [HRS § ] 286–163[.]" On the other hand, HRS § 286–163 provides that, in the event of a collision resulting in injury or death, "*nothing* in this part *shall* be construed to *prevent*

---

9. In this connection, HRS § 286–154 (1993) provides in relevant part that "[t]he consent of a person deemed to have given the person's consent pursuant to section 286–154 shall not be withdrawn by reason of the person's being *dead,* unconscious, or in any other state which renders the person incapable of consenting to examination, and the test may be given." (Emphasis added.) Thus, the legislature clearly contemplated—as a non-absurdity—the extraction of blood from deceased persons.

the police from obtaining a sample of breath, blood, or urine as evidence of intoxication or influence of drugs," *see supra* note 1. (Emphases added.) The plain language of HRS § 286–163 is unambiguous: the police are authorized to obtain a blood sample pursuant to HRS § 286–163 notwithstanding any other provision of the implied consent statute, including the requirement that a driver be lawfully arrested before administering a test pursuant to HRS § 286–151.[10] Indeed, the legislature's command that there should be no impediment to obtaining a breath, blood, or urine sample as evidence of DUI pursuant to HRS § 286–163 would make little sense if the failure to comply with the prerequisites of HRS § 286–151, before obtaining such a sample, rendered inadmissible the evidence obtained therefrom.[11]

Moreover, assuming *arguendo* that there is some ambiguity as to whether the legislature intended HRS § 286–163 to serve as an exception to all of the prerequisites set forth in HRS § 286–151, the 1995 legislative history underlying HRS § 286–163 resolves it. *See supra* section III.A.1. As we have demonstrated, HRS § 286–163, as amended, was intended to ensure the authority of the police to obtain blood samples of persons invoking injury, whether real or feigned, *to avoid arrest.* Thus, the legislature reaffirmed its commitment to the proposition that "[n]othing in [the implied consent statute] shall be

construed to prevent the police from obtaining a sample of breath or blood as evidence of intoxication" and identified the procedure by which such samples could be obtained from drivers who were treated for injuries. *See* 1995 Haw. Sess. L. Act 197, § 1 at 372–73. That being so, the legislative history clearly establishes that the legislature intended HRS § 286–163 to permit mandatory testing precisely in those situations, such as the present matter, in which the police have not made an arrest because the suspect has sought medical attention.

■ In light of the above, we hold that HRS ch. 286, part VII does not require the police to comply with the prerequisites of HRS § 286–151 in order to obtain breath, blood, or urine samples pursuant to HRS § 286–163.

 b. *Neither the fourth amendment to the United States Constitution nor article I, section 7 of the Hawai'i Constitution require the police to arrest a driver prior to obtaining a breath, blood, or urine sample pursuant to HRS § 286–163.*

■ In addition to his statutory argument, Entrekin raises a constitutional challenge to his mandatory blood test, in the absence of an arrest, under the fourth amendment to

10. For this reason, Entrekin's citations to *In the Interest of R.L.I.*, 771 P.2d 1068 (Utah 1989), and *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968), are unhelpful to him. In *R.L.I.*, the Utah Supreme Court held that the nonconsensual extraction of a blood sample from a minor was inadmissible as evidence because, *inter alia*, the police had failed to arrest the minor prior to obtaining the sample, as required by the section of Utah's implied consent statute pursuant to which the blood sample was obtained. *R.L.I.*, 771 P.2d at 1070. Similarly, in *Cruz*, the Utah Supreme Court held that, because the police extracted the defendant's blood without his consent and in the absence of an arrest, as required by the implied consent statute, the blood sample was not admissible as evidence in the defendant's criminal trial. In neither *R.L.I.* nor *Cruz* did the Utah Supreme Court cite to any statutory provision, analogous to HRS § 286–163, allowing for mandatory blood extraction. Consequently, both cases are inapposite to the present matter.

11. We note that, in support of his contention that HRS § 286–163 would be absurd if it applied to drivers involved in single-vehicle collisions in which they are the only person injured, *see* Section III.A.1 *supra*, Entrekin himself argues that, "[w]hen interpreted literally, the statute takes away a DUI suspect's statutory rights to choose between the breath test and blood test and to be informed of the administrative revocation sanctions if he is involved in a collision resulting in injury to no one but himself" and that, "[t]herefore, a literal interpretation of the statute takes way the statutory rights of a DUI suspect if no other person was injured or even involved in the collision." Because the arrest requirement of the implied consent statute is—like the requirement that drivers be informed of the administrative revocation sanctions of refusing any test and given the choice between a breath and a blood test—set forth in HRS § 286–151, Entrekin's argument undermines his contention that an arrest is required prior to a blood extraction performed pursuant to HRS § 286–163.

the United States Constitution[12] and article I, section 7 of the Hawai'i Constitution (1993).[13] Specifically, Entrekin argues that the extraction of a blood sample, absent either a valid arrest or actual—rather than implied—consent, constitutes an unreasonable search and seizure. We disagree.

As a preliminary matter, we need not address Entrekin's contention that statutory "implied" consent does not rise to the level of a knowing, voluntary, and intelligent waiver of one's constitutional right to be free from unreasonable searches and seizures. As discussed *supra* in Section III.A.2.a., the legislature intended HRS § 286–163 to carve out an exception to the implied consent statute. Consequently, the mandatory testing provision is not grounded in the construct of "implied consent" in the first place. In any event, reliance upon *implied* consent is unnecessary, because, as discussed more fully *infra*, mandatory testing pursuant to HRS § 286–163 survives constitutional scrutiny in the absence of *any* consent.[14]

 In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that the fourth amendment to the United States Constitution does not prohibit a nonconsensual, warrantless blood extraction from a person suspected of DUI if: (1) the police have probable cause to believe that the person is DUI; (2) exigent circumstances are present under which the delay necessary to obtain a warrant would result in the loss of evidence; and (3) the procedures employed to extract the blood are reasonable. Although the po-

lice in *Schmerber* performed the blood extraction incident to the driver's arrest, the United States Supreme Court clarified in *Winston v. Lee*, 470 U.S. 753, 759, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), that *Schmerber* "fell within the exigent-circumstances exception to the warrant requirement[.]" Earlier, *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), established as a federal constitutional matter that warrantless seizures of evidence justified by exigent circumstances did not have be accompanied by an arrest. Accordingly, in light of *Winston* and *Cupp*, there now appears to be universal agreement among the courts that have addressed the question that an arrest is not integral to the *Schmerber* holding and, consequently, that a warrantless extraction of blood from a driver lawfully suspected of DUI, does not violate the fourth amendment even in the absence of an arrest or actual consent. *See United States v. Chapel*, 55 F.3d 1416 (9th Cir.1995) (overruling *United States v. Harvey*, 701 F.2d 800 (9th Cir. 1983)); *U.S. v. Berry*, 866 F.2d 887 (6th Cir.1989); *State v. Salazar*, 146 Ariz. 547, 707 P.2d 951 (Ct.App.1985); *People v. Deltoro*, 263 Cal.Rptr. 265 (Cal.Ct.App.1990); *People v. Trotman*, 214 Cal.App.3d 430, 262 Cal. Rptr. 640 (1989); *People v. Sutherland*, 683 P.2d 1192 (Colo.1984); *Filmon v. State*, 336 So.2d 586 (Fla.1976); *DeVaney v. State*, 259 Ind. 483, 288 N.E.2d 732 (Ind.1972); *State v. Findlay*, 259 Iowa 733, 145 N.W.2d 650 (Iowa 1966); *State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001); *State v. Aguirre*, 295 N.W.2d 79 (Minn.1980); *State v. Deshner*, 158 Mont. 188, 489 P.2d 1290 (1971); *Galvan v. State*,

12. The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

13. Article I, section 7 of the Hawai'i Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants

shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

14. "Implied consent" is something of a misnomer, inasmuch as a typical implied consent statute, including Hawaii's, accords drivers the right to refuse a breath, blood, or urine test, rather than, as the term seems to suggest, require them. Thus, implied consent statutes impose "narrower guidelines for law enforcement authorities in the administration of sobriety tests upon suspected drunken drivers" than the United States Constitution would otherwise allow. *Rossell v. City and County of Honolulu*, 59 Haw. 173, 180, 579 P.2d 663, 668 (1978).

98 Nev. 550, 655 P.2d 155 (1982); *Wilhelmi v. Director of Dep't of Transp.*, 498 N.W.2d 150 (N.D.1993); *State v. Milligan*, 304 Or. 659, 748 P.2d 130 (1988); *Aliff v. State*, 627 S.W.2d 166 (Tex.Ct.App.1982); *Van Order v. State*, 600 P.2d 1056 (Wyo.1979). We agree with the weight of authority that a nonconsensual, warrantless blood extraction does not violate the fourth amendment to the United States Constitution, whether the person has been arrested or not, so long as (1) the police have probable cause to believe that the person is DUI and that the blood sample will evidence that offense, (2) exigent circumstances are present, and (3) the sample is obtained in a reasonable manner.

 Notwithstanding that the appellate courts of this state "have not hesitated to extend the protections afforded under article I, section 7 of the Hawai'i State Constitution beyond those available under the cognate [f]ourth [a]mendment to the United States Constitution when logic and a sound regard for the purposes of those protections have so warranted," *State v. Vinuya*, 96 Hawai'i 472, 484, 32 P.3d 116, 128 (App.2001) (quoting *State v. Kachanian*, 78 Hawai'i 475, 480, 896 P.2d 931, 936 (App.1995) (quoting *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974))) (internal quotation signals omitted), we cannot discern any cogent reason to reach a different result under article I, section 7 of the Hawai'i Constitution. It is well established under Hawai'i law that warrantless searches and seizures of items within a constitutionally protected area are presumptively unreasonable unless the police have both probable cause and a legally recognized exception to the warrant requirement. *State v. Jenkins*, 93 Hawai'i 87, 102, 997 P.2d 13, 28 (2000); *State v. Wallace*, 80 Hawai'i 382, 393, 910 P.2d 695, 706 (1996); *State v. Bonnell*, 75 Haw. 124, 137, 856 P.2d 1265, 1273 (1993). "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed." *Jenkins*, 93 Hawai'i at 102, 997 P.2d at 28 (quoting *State v. Navas*, 81 Hawai'i 113, 116, 913 P.2d 39, 42 (1996) (citing *State v. Jerome*, 69 Haw. 132, 134, 736 P.2d 438, 439 (1987))).

This court recognizes exceptions to the warrant requirement in "those cases where the societal costs of obtaining a warrant, such as ... the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Id.* (quoting *State v. Clark*, 65 Haw. 488, 494, 654 P.2d 355, 360 (1982)). One such legally recognized exception is exigent circumstances. *See id.*; *State v. Pulse*, 83 Hawai'i 229, 245, 925 P.2d 797, 813 (1996); *Clark*, 65 Haw. at 494, 654 P.2d at 360. The exigent circumstances exception is present

> when the demands of the occasion reasonably call for an immediate police response. More specifically, it includes situations presenting ... an immediate threatened removal or destruction of evidence. However, the burden, of course, is upon the government to prove the justification ..., and whether the requisite conditions exists is to be measured from the totality of the circumstances. And in seeking to meet this burden, the police must be able to point to specific and articulable facts from which it may be determined that the action they took was necessitated by the exigencies of the situation.

*Jenkins*, 93 Hawai'i at 102, 997 P.2d at 28 (quoting *Pulse*, 83 Hawai'i at 245, 925 P.2d at 813 (quoting *Clark*, 65 Haw. at 494, 654 P.2d at 360)) (some ellipsis points added and some in original).

We have never held that a search and/or seizure based on probable cause and exigent circumstances must be accompanied by an arrest; nor do we see any need for such a rule. As the Ninth Circuit has noted, "[t]he requirement of a contemporaneous arrest adds nothing to that constitutional protection; the probable cause threshold in these circumstances remains the same." *Chapel*, 55 F.3d at 1419. *See also Aguirre*, 295 N.W.2d at 81 ("[T]he constitutional prerequisite to the warrantless nonconsensual removal of blood of a conscious or unconscious driver is the same: probable cause plus exigent circumstances."); *Milligan*, 748 P.2d at 137 (noting that the "incantation of the words of an arrest" provide less protection from bodily invasion than the requirement of probable cause).

In the present matter, Entrekin does not dispute that Officer Nakooka had probable cause to believe that Entrekin was DUI or that exigent circumstances were present when he requested that a sample of Entrekin's blood be obtained. Nor do we have any reason to question the existence of either element. Entrekin was involved in a single-car accident in which he crossed the center line of the highway, sideswiped the guardrail on the opposite side, and collided with a dirt embankment. There was no apparent explanation for this loss of control; no other car was involved in the accident, and there was no passenger who might have distracted Entrekin. Most importantly, Officer Nakooka detected the odor of liquor on Entrekin's breath, and when he asked Entrekin to perform a field sobriety test, Entrekin claimed an injury despite his prior denial of any harm. In sum, the "facts and circumstances" were "sufficient ... to warrant a person of reasonable caution to believe that an offense ha[d] been committed." *Jenkins,* 93 Hawai'i at 102, 997 P.2d at 28.

In addition, exigent circumstances were clearly present. It is undisputed that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Schmerber,* 384 U.S. at 770, 86 S.Ct. 1826; *see also State v. Ferm,* 94 Hawai'i 17, 23, 7 P.3d 193, 199 (App.2000) ("the arrested person's blood-alcohol level ... by its very nature dissipates and is forever lost as time passes[,] and any alcohol ingested by the arrested person is digested and its effects on the body pass").

Finally, Entrekin's blood was extracted in a reasonable manner. Officer Pacheco requested that MMMC medical personnel, who were treating Entrekin for his injuries, obtain a blood sample in accordance with HRS §§ 286–163(c) and (d). Thus, like the blood test administered in *Schmerber,* "[Entrekin's] blood was taken by a physician in a hospital environment according to accepted medical practices." [15] *Schmerber,* 384 U.S. at 771, 86 S.Ct. 1826.

Accordingly, we hold that the nonconsensual extraction of a blood sample from Entrekin pursuant to HRS § 286–163 violated neither the fourth amendment to the United States Constitution nor article 1, section 7 of the Hawai'i Constitution, notwithstanding the fact that the police had not placed him under arrest prior to obtaining the blood sample.

In sum, we hold that the district court erred in granting Entrekin's motion to suppress the results of his blood test.

## IV. CONCLUSION

Based on the foregoing, we vacate the district court's order granting Entrekin's motion to suppress and remand the case for further proceedings consistent with this opinion.

---

**15.** Thus, as in *Schmerber,* "[w]e are ... not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment[.]" *Schmerber,* 384 U.S. at 771–72, 86 S.Ct. 1826.