163 P.3d 1143

STATE of Hawai'i, Respondent/Plaintiff–
Appellee,

v.

Thomas WILLIAMS,
Petitioner/Defendant–Appellant.

No. 27286.

Supreme Court of Hawai'i.

July 24, 2007.

Matthew S. Kohm, Wailuku, for petitioner/defendant-appellant, Thomas Williams.

Peter A. Hanano, Deputy Prosecuting Attorney, for respondent/plaintiff-appellee,
State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Petitioner Thomas Williams seeks review of the Intermediate Court of Appeals' (ICA) January 22, 2007 judgment affirming the April 8, 2005 judgment of the district court of the second circuit.[1] We accepted Williams's application for a writ of certiorari and reverse the judgment of the ICA.

Williams asserts that the ICA gravely erred in affirming the district court judgment denying Williams's motion to suppress evidence. Williams claims that there was no evidence of a "collision" and an insufficient basis to support a finding of probable cause to arrest Williams with the charge of Operating Vehicle Under the Influence of an Intoxicant (OUI), Hawai'i Revised Statutes (HRS) § 291E-61, both of which are required for an officer to order a mandatory blood extraction under HRS § 291E-21(c). Based on this contention, Williams filed a motion to suppress the evidence gathered from the blood extraction, which was denied by the district court and affirmed on appeal.

We hold that the district court was wrong in denying Williams's motion to suppress the blood test results, because there was insufficient evidence that Williams was involved in a "collision." Therefore, we reverse the judgment of the ICA and vacate the district court's April 8, 2005 judgment, and remand the case to the district court with instructions to enter an order granting Williams's motion to suppress and to allow Williams to withdraw his conditional no contest plea made pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 11(a)(2). *See State v. Kealaiki,* 95 Hawai'i 309, 314 & n. 6, 22 P.3d 588, 593 & n. 6 (2001) (observing "that in the case where the pretrial motion seeks to suppress the evidence incriminating the defendant and the appeal is decided against the government, the proceedings would also ordinarily come to an end, the question appealed being the underlying predicate reason for the conditional plea" and that HRPP

"Rule 11(a)(2) contemplates by its terms that the case would be remanded to allow withdrawal of the conditional plea, after which . . . dismissal [may] follow because of the absence of the evidence suppressed").

## I. BACKGROUND

### A. Factual Background

The facts in this case are drawn from the testimony of Maui Police Department Officer Thomas Martins at the February 18, 2005 hearing on Williams's motion to suppress.

On March 5, 2004, at around 4:00 p.m., Officer Martins was called to investigate a motor vehicle accident involving a male party and a motorcycle on the shoulder of the Haleakala Highway, which is located in the Division of Wailuku, County of Maui.

Officer Martins arrived unaccompanied at the scene, and observed the motorcycle on the side of the roadway and the male party about fifteen feet away, close to the shoulder of the roadway. Officer Martins saw that Williams was bleeding from the mouth and complaining of pain to his mouth. According to Officer Martins, Williams had a laceration on his lip that was approximately one-inch long.

Upon making contact with Williams, Officer Martins, who has received Driving Under the Influence (DUI) training for detection of odor on a party's breath and blood shot or watery eyes, noticed an odor of alcohol on Williams's breath. Officer Martins had gotten close to Williams in order to request Williams's driver's license, insurance card, and registration.

Medics arrived while Officer Martins was taking Williams's information and then transported Williams to the hospital, where a blood draw was taken at Officer Martins's request and without obtaining Williams's consent or a warrant.

On direct examination, Officer Martins testified that based on his investigation—which considered the lack of any debris on the ground, skid marks, "or anything like that"—

---

1. The Honorable Paul Horikawa, Per Diem Judge, presided over the motion to suppress; the Honorable Ruby A. Hamili, Per Diem Judge, presided over the entry of Williams's plea and sentencing.

he concluded that the cause of the accident was that the party was intoxicated and fell from his motorcycle to the ground. However, when asked whether the defendant had made any statements as to what happened, Officer Martins replied, "I don't recall exactly what was said." [2] Subsequently, on cross-examination, Officer Martins acknowledged that he did not know what caused the accident:

Q. And now, and you also said you don't recall how the accident was caused. Let me ask you this way: Do you know what caused the accident?

A. We—just from the investigation that we got, yes. No debris on the ground, no skid marks or anything like that, so the conclusion was that the party had fallen down on the ground.

Q. You don't know that, right?

A. No.

Q. And you don't know whether there was another car that came into the motorcycle's lane of travel that caused the motorcycle to fall to the ground?

A. No.

Q. You don't know that; right?

A. No.

On re-cross examination, the following colloquy took place:

Q. So just by the fact that a person has alcohol on his breath, that doesn't necessarily support a conclusion that that person is intoxicated and impaired; correct?

A. Compared to driving motorcycles and getting into an accident?

Q. Right.

A. Unless there was something else that caused the accident.

Q. Now, in Mr. Williams' case, we don't know what caused the accident?

A. We don't know exactly.

Officer Martins also acknowledged that while the detection of an odor of alcohol on someone's breath indicates that the person has been drinking, one could not conclude from such an odor the amount of alcohol imbibed.

B. *Procedural History*

On May 5, 2004, the State of Hawai'i charged Williams by complaint with one count of Operating a Vehicle Under the Influence of an Intoxicant (OUI), in violation of HRS § 291E–61 (Supp.2004),[3] and one count of Conditions of Operation and Registration of Motorcycles and Motorscooters, in violation of HRS § 431:10G–301, the latter of which is not at issue in this case. Williams filed a motion to suppress evidence on February 7, 2005, in which he argued that no probable cause existed to justify the forcible extraction of his blood pursuant to HRS § 291E–21(c) (Supp.2004). On April 8, 2005 the district court issued a written order denying William's motion to suppress. That order, in its entirety, stated the following:

A hearing was held on February 18, 2005, on Defendant's Motion to Suppress Evidence filed herein on February 7, 2005, and the Court having heard the testimony of Officer Thomas Martins and the reasonable inferences therefrom and the record on file herein,

The Court finds that Officer Thomas Martins had probable cause to arrest Defendant Thomas Allan Williams for the offense of Operating A Vehicle Under The Influence Of An Intoxicant. Further, Defendant Thomas Allan Williams had significant injuries that justified the forced of [sic] withdrawal of a blood sample. Hawaii Revised Statutes § 291E–21. See also,

---

**2.** In a declaration attached to Williams's motion to suppress, Joseph T. Toma, Williams's attorney at the hearing, stated that "Officer Martins also noted in his report a statement from Defendant providing that 'while driving down Haleakala Highway he lost control of his motorcycle and fell to the ground. ' State that's all he can remember.'" This purported statement by Williams was neither referred to nor presented as evidence in the motion to suppress hearing.

**3.** HRS § 291E–61 provides in relevant part:

**Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

*State v. Entrekin,* 98 Hawai'i 221, 47 P.3d 336 (2002).

Based upon the foregoing, the Motion to Suppress Evidence filed on February 7, 2005, is hereby denied.

DATED: Wailuku, Maui, Hawai'i APR 04 2005.

Williams entered into a conditional plea under HRPP Rule 11(a)(2), and timely appealed the district court's order denying the motion to suppress.

In its December 21, 2006 summary disposition order (SDO), the ICA affirmed the district court's denial of Williams's motion to suppress, stating:

> Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues as raised by the parties, we conclude that the facts and circumstances were sufficient to warrant a person of reasonable caution (Officer Martins) to believe that an offense had been committed (Williams riding his motorcycle under the influence of alcohol) and a significant injury had occurred (the laceration to Williams' lip), and therefore sufficient probable cause was established to order that a blood extraction be performed on Williams. Williams' nonconsensual blood extraction pursuant to HRS § 291E–21 was sound. *State v. Aguinaldo,* 71 Haw. 57, 62, 782 P.2d 1225, 1228 (1989); *State v. Entrekin,* 98 Hawai'i 221, 47 P.3d 336 (2002).

ICA's SDO at 3.

## II. *STANDARD OF REVIEW*

The appellate court reviews a "circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.'" *State v. Kauhi,* 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997) (citation omitted).

In motions to suppress evidence under the exclusionary rule of the fourth amendment, we have said that

> [T]he proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his

or her own Fourth Amendment rights were violated by the search and seizure sought to be challenged.

*State v. Anderson,* 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997) (internal citations, quotation marks, brackets, and emphases omitted). Rather than constitutional issues, however, this appeal concerns whether the blood evidence was secured in a manner that complies with our statute, HRS § 291E–21(c). Therefore, in this *de novo* review, we must ask whether Williams has met his burden of establishing that the blood draw was unlawful under the terms of the statute.

## III. *DISCUSSION*

### A. *The Requirements for a Nonconsensual Blood Draw under HRS § 291–21(c)*

The central issue in this case is whether Officer Martins complied with the statute mandating blood tests in the event of a collision that results in injury or death and for which the officer has probable cause to believe an enumerated offense was committed. That statute, HRS § 291E–21(c), provides in relevant part:

> In the event of *a collision* resulting in injury or death and if a law enforcement officer has *probable cause to believe that a person involved in the collision has committed a violation of* section 707–702.5, 707–703, 707–704, 707–705, 707–706, *291E–61,* 291E–61.5, or 291E–64, the law enforcement officer shall request that a sample of blood or urine be recovered from the vehicle operator or any other person suspected of committing a violation.

HRS § 291E–21(c) (emphases added). Although framed in mandatory terms ("the law enforcement officer *shall*"), this court has also interpreted this statute as setting out the basis of a police officer's authorization to obtain a blood sample without consent. *See Entrekin,* 98 Hawai'i at 226, 47 P.3d at 341 ("HRS § 286–163 [the predecessor of HRS § 291E–21] *authorizes* the police to obtain a blood sample of a driver involved in a collision resulting in an injury to or death of any person, including the driver." (Emphasis added.)).

■■ Therefore, a police officer can lawfully obtain a blood draw without consent if (1) there has been "a collision resulting in injury or death" *and* (2) the officer "has probable cause to believe that a person involved in the collision has committed" one of the enumerated offenses. HRS § 291E–21. The results of nonconsensual blood draws that do not comply with the statutory requirements are unlawful and may be excluded from evidence (or suppressed by appropriate motion) under the "fruit of the poisonous tree" doctrine. *See State v. Fukusaku*, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997) ("[T]he 'fruit of the poisonous tree' doctrine prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police." (Quoting *State v. Medeiros*, 4 Haw.App. 248, 251 n. 4, 665 P.2d 181, 184 n. 4 (1983).)).

B. *The "Collision" Requirement*

■ Williams argues that "there is no real evidence of a 'collision' " in this case. "Collision" is defined as "the action or an instance of colliding, violent encounter, or forceful striking together typically by accident and so as to harm or impede." Webster's Third New Int'l Dictionary 446 (1993). Based on the facts adduced at the motion to suppress hearing, there is insufficient evidence to conclude that Williams was involved in a collision.

Officer Martins testified that he found Williams sitting alone, on the shoulder of the highway, about 15 feet away from the motorcycle, and that he was bleeding from the mouth and had lacerated his lip. He further testified that his investigation revealed no debris on the ground, skid marks, "or anything like that." Notably absent from Officer Martins's testimony was any indication that the motorcycle was damaged or of its position with respect to the road. Furthermore, by his own testimony, Officer Martins concluded that, based on his investigation, Williams "fell off the bike."

■ These facts are insufficient to establish that there was a collision. Although single-vehicle accidents may qualify as collisions, *see Entrekin*, 98 Hawai'i at 223, 47 P. 3 at 338 ("Entrekin's auto crossed the center lane marking of Haleakala Highway, sideswiped the guardrail along the opposite side of the highway, and then crossed back into his original lane of travel and *collided* with a dirt embankment." (Emphasis added.)), in such a case the vehicle must nevertheless "collide" with another object. Here, the factual record does not establish any collision, and even Officer Martins's theory of the incident merely suggests that Williams "fell," which is insufficient, without more, to imply a collision. Without any collision, the blood draw under HRS § 291E–61 was unlawful.

The district court did not make express determinations regarding whether or not a collision occurred, nor did the ICA consider the matter. Rather, the lower courts focused on the injury requirement, which was apparent and not contested by Williams, and the probable cause issue.

As pointed out by the prosecution, Williams appears to have conceded that he was involved in an "accident," as revealed by the questions his attorney asked of Officer Martins at the hearing on the motion to suppress. However, Williams nowhere admits to being involved in a "collision," and, rather, has contested that very point. The prosecution argues that "the fact that Williams was involved in a motor vehicle 'accident' as opposed to a 'collision' does not preclude the police from obtaining a blood sample from Williams pursuant to HRS Section 291E–21," and notes that, in *Entrekin*, this court used the terms "accident" and "collision" interchangeably in discussing the applicability of HRS § 291E–21 to the facts of that case.

It is plain that in common parlance, an automobile collision is often referred to as an "accident." In fact, automobile "accidents" usually involve a collision, as the Webster definition of the term "collision"—an act that is "typically by accident"—recognizes. *See supra*. However, while a traffic accident can occur in various ways, the statute requires that there be a collision. Officer Martins's theory that Williams "fell" from his bike would qualify as an accident that falls short of a collision. The prosecution has not presented a persuasive argument that the plain

language of HRS § 291E–21 is meant to embrace accidents that do not involve collisions. Although this court, in *Entrekin*, at times used the word "accident" to refer to what was clearly a collision, in no way were we suggesting that the latter is not a necessary part of the statutory requirement.

 Furthermore, the legislative history of HRS § 291E–21 buttresses the conclusion that "collision" cannot be read as synonymous with "accident." Although the current statute was enacted in 2000, its predecessor was first enacted in 1981 and codified as HRS § 286–163. In its initial form, it applied to "the driver of any vehicle involved in an *accident* resulting in injury to or death of any person." 1981 Haw. Sess. L. Act 67, § 3, at 101 (emphasis added). However, in 1995, the law was amended to apply to collisions rather than accidents. *See* 1995 Haw. Sess. L. Act 197, § 1 at 372–73 ("In the event of a *collision* resulting in injury or death . . . ." (Emphasis added.)). This change makes clear that the legislature intended the amended law to apply only in case of a collision, not merely an accident. When the law was reenacted in 2000 as part of a consolidation of provisions relating to operating a vehicle while using an intoxicant, *see* 2000 Haw. Sess. L. Act 189, Part III, at 406–07, what would become HRS § 291E–21 kept the prior law's reference to "collision" rather than accident. *Id.* § 11, at 410–11.

Therefore, because there is insufficient evidence of a collision in this case, the statutory requirements of HRS § 291E–21 were not met. For this reason, the blood draw was improper and should have been suppressed. Having found that the motion to suppress was improperly denied on this ground, we need not address Williams's argument that the district court erred in its determination that Officer Martins had probable cause to believe Williams had committed the OUI offense.

IV. *CONCLUSION*

Therefore, the January 22, 2007 judgment of the ICA is reversed and the district court's April 8, 2005 is vacated and the case is remanded to the court with instructions to enter an order granting Williams's motion to suppress and to allow Williams to withdraw his plea pursuant to HRPP Rule 11(a)(2). *See Kealaiki*, 95 Hawai'i at 314 & n. 6, 22 P.3d at 593 & n. 6.

