98 P.3d 630

STATE of Hawai'i, Plaintiff–Appellee,

v.

Robert ANGER, Defendant–Appellant.

No. 24732.

Supreme Court of Hawai'i.

Sept. 30, 2004.

As Corrected Oct. 6, 2004.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee, State of Hawai'i.

Mitsuhiro Murakawa, Deputy Public Defender, on the briefs, for the defendant-appellant, Robert Anger.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant Robert Anger appeals from the November 20, 2003 judgment,[1] convicting him of (1) driving under the influence of intoxicating liquor (Count I), in violation of Hawai'i Revised Statutes (HRS) § 291-4 (1993),[2] (2) lack of due care (Count II), in violation of Maui County Code (MCC) § 10.52.010, and (3) driving without no fault insurance (Count III), in violation of HRS § 431:10C-104 (1993 & Supp.2003),[3] pursuant

---

1. On October 1, 2003, this court remanded the present matter to the district court for the entry of a written judgment pursuant to *State v. Bohannon*, 102 Hawai'i 228, 74 P.3d 980 (2003). On November 20, 2003, the district court filed a written notice of entry of judgment.

2. HRS § 291-4 provided in relevant part:
 **Driving under influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that a person concerned is under the influence of intoxicating liquor in any amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
 (2) The person operates or assumes actual physical control of the operation of any vehi-

cle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood. . . .
The offense of operating a vehicle under the influence of an intoxicant has been recodified as HRS § 291E-61, effective January 1, 2002, and amended in respects not pertinent to the present matter. *See* 2000 Haw. Sess. L. Act 189, §§ 23 and 30 at 425-26, 432; 2001 Haw. Sess. L. Act 157, § 25 at 397-98.

3. HRS § 431:10C-104 provides in relevant part:
 **Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C-105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.
 (b) Every owner of a motor vehicle used or operated at any time upon any public street,

to his entry of a conditional plea of no contest in the district court of the second circuit, the Honorable Rhonda I.L. Loo presiding. On appeal, Anger contends that the district court erred: (1) in denying his motion to suppress the results of a blood test because (a) the relevant testimony of Maui Police Department (MPD) Officer Rockwell Silva that Anger sustained injuries in a motor vehicle accident constituted inadmissible hearsay, (b) the district court's conclusion that Officer Silva was authorized, pursuant to HRS § 286–163 (1993 & Supp.2000),[4] to draw his blood was wrong, and (c) the district court's conclusion that HRS § 286–151 (1993 & Supp.2000)[5] and this court's decision in *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268

(1999), were inapplicable to the disposition of Anger's motion was likewise wrong; (2) in concluding that HRS § 286–163 allowed for the forcible extraction of Anger's blood sample; and (3) in ruling that the blood draw did not amount to an unconstitutional search and seizure, even though Anger was not under arrest and had not consented to the blood draw.

The State of Hawai'i [hereinafter, "the prosecution"] counters, *inter alia*, (1) that the district court properly considered Officer Silva's testimony, inasmuch as hearsay evidence is admissible at pretrial hearings on motions to suppress, pursuant to Hawai'i Rules of Evidence (HRE) Rules 1101(d)(1)[6]

road, or highway of this State shall obtain a motor vehicle insurance policy upon such vehicle which provides the coverage required by this article and shall maintain the motor vehicle insurance policy at all times for the entire motor vehicle registration period.

4. HRS § 286–163 was the "mandatory testing" provision contained within part VII of HRS ch. 286 (1993 & Supp.2000), the so-called "implied consent statute," which governed the administration of breath, blood, and urine tests of drivers suspected of driving under the influence of drugs or alcohol. HRS § 286–163 provided in relevant part:

> (a) Nothing in [part VII] shall be construed to prevent the police from obtaining a sample of breath, blood, or urine as evidence of intoxication or influence of drugs from the driver of any vehicle involved in a collision *resulting in injury* to or the death of any person.
>
> . . . .
>
> (c) In the event of a collision *resulting in injury* or death, and the police have probable cause to believe that a person involved in the incident has committed a violation of section . . . 291-4 . . ., the police shall request that a sample of blood or urine be recovered from the driver or any other person suspected of committing a violation of section . . . 291-4[.]
>
> (d) The police shall make the request under subsection (c) to the hospital or medical facility treating the person from whom the police request that the blood or urine be recovered. . . .

(Emphases added.) The implied consent statute, including the mandatory testing provision, was recodified as HRS ch. 291E, part II, effective January 1, 2002, and amended in respects not pertinent to the present matter. *See* 2000 Haw. Sess. L. Act 189, § 23 and 28 at 407–30, 432; 2001 Haw. Sess. L. Act 157, §§ 11 and 12 at 382–84.

5. HRS § 286–151 provided in relevant part:

> (a) Any person who operates a motor vehicle or moped on the public highways of the State shall be deemed to have given consent, subject to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine, as applicable.
>
> (b) The test or tests shall be administered at the request of a police officer having probable cause to believe the person driving or in actual physical control of a motor vehicle or moped upon the public highways is under the influence of intoxicating liquor or drugs, or is under the age of twenty-one and has a measurable amount of alcohol concentration, only after:
>
> (1) A lawful arrest; and
> (2) The person has been informed by a police officer of the sanctions under part XIV and [HRS §§ ] 286–151.5 and 286–157.3.

HRS § 286–151 has been repealed and reenacted, in amended form, as HRS § 291E–11, *see supra* note 3.

6. HRE Rule 1101 (1993) provides in relevant part:

> (b) Proceedings. These rules apply generally to civil and criminal proceedings.
>
> . . . .
>
> (d) Rules inapplicable. The rules (other than with respect to privileges) do not apply in the following:
> (1) Preliminary questions of fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.
> (2) Grand jury. Proceedings before grand juries.
> (3) Miscellaneous proceedings. Proceedings for extradition or rendition; preliminary hearings in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses,

and 104,[7] (2) that, even if the HRE governed hearings on motions to suppress, Officer Silva's testimony would be admissible under HRE Rule 803(b)(24),[8] and (3) that the district court could have concluded that Anger had been injured based solely on the severity of the traffic accident.

For the reasons discussed *infra*, we hold that the district court erred in denying Anger's motion to suppress because the testimony of Officer Silva constituted inadmissible hearsay. We further hold that the prosecution is judicially estopped from arguing on appeal that the HRE do not govern hearings on motions to suppress.

## I. BACKGROUND

The present matter arises out of a single-car motor vehicle accident in which Anger was involved on March 31, 2000.

On December 7, 2000, the prosecution charged Anger by complaint with the following offenses: (1) driving under the influence of intoxicating liquor (Count I), in violation of HRS § 291–4, *see supra* note 2; (2) inattention to driving without due care (Count II), in violation of HRS § 291–12 (1993 & Supp. 2003); and (3) driving without no fault insurance (Count III), in violation of HRS § 431:10C–104(a), *see supra* note 3.

On June 8, 2001, Anger filed a motion to suppress blood test results. Specifically, Anger sought an order suppressing and precluding from use at trial the results of a blood test performed on him on or about March 31, 2000 after his discharge from the hospital. Anger claimed that his blood was extracted in violation of HRS ch. 286, as well as the United States and Hawai'i Constitutions.

The district court conducted a hearing on Anger's motion to suppress on July 27, 2001. The following facts were adduced. At approximately 11:35 p.m. on March 31, 2000, MPD Officer Donald B. Nakooka responded to a motor vehicle accident at the intersection of Pi'iholo Road and Makawao Avenue on the island of Maui. Upon arriving at the scene, Officer Nakooka observed a full-size Toyota pickup truck completely overturned, with Anger, the lone occupant, inside the cab. Officer Nakooka noted that Anger's vehicle had been totaled in a collision with a guy wire and a fire hydrant. Officer Nakooka testified that Anger stated that he had sustained no injuries as a result of the accident. Officer Nakooka notified emergency medical technicians and the fire department that they were needed to remove Anger from the vehicle. Following his extrication, Anger was transported to Maui Memorial Hospital. Officer Nakooka then requested that central

---

and search warrants; and proceedings with respect to release on bail or otherwise.

7. HRE Rule 104 (1993) provides in relevant part:
 (a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b). In making its determination the court is not bound by the rules of evidence except those with respect to privileges.
 (b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

8. HRE Rule 803 (1993 & Supp.2003) provides in relevant part:
 **Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 . . . .

(b) Other exceptions.
 . . . .
(24) Other exceptions. A statement not specifically covered by any of the exceptions in this paragraph (b) but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

police dispatch send another police officer to the hospital to obtain a blood sample from Anger.

MPD Officer Rockwell Silva was dispatched to Maui Memorial Hospital to arrange for the extraction of a blood sample from Anger. Anger told Officer Silva that he was not injured, so Officer Silva awaited the diagnosis of a physician in order to determine whether Anger had in fact sustained an injury. Officer Silva noted that Anger exhibited red, watery eyes, and the odor of liquor emanated from his breath.

At the suppression hearing, Officer Silva testified that he believed that, pursuant to HRS § 291-4, he had the authority to draw blood for evidence of blood alcohol content if Anger had been injured in the motor vehicle accident, even over Anger's objections.[9] Officer Silva further testified that after a doctor told him that Anger had been injured, Officer Silva informed Anger that his blood would be drawn to determine blood alcohol content. Officer Silva could not recall the name of the physician who allegedly stated that Anger had been injured. The following colloquy ensued:

> [Officer Silva]: ... I don't recall who was the doctor on duty, but he did give me a diagnos[is] [that Anger] did sustain injuries.
>
> [Deputy Public Defender (DPD) ]: *Your Honor, I'll object to that. That's calling for hearsay.*
>
> [Deputy Prosecuting Attorney (DPA) ]: Your Honor, that ... doesn't go to the truth of the matter. Instead, *it goes to the officer's state of mind ....*
>
> THE COURT: *Overrule the objection.* Go ahead.
>
> . . . .
>
> [DPA]: So [Anger] had the odor of liquor on his breath and the injury.
>
> [Officer Silva]: Correct.
>
> [DPA]: Okay. And that's when you ordered the blood draw.

> [Officer Silva]: Yes.
>
> [DPA]: Okay.
>
> [DPD]: *Your Honor, I'll object to that. There's a question of injury and ... Mr. Silva is ... explaining that he got it from the doctor. So that clearly calls for hearsay.*
>
> [DPA]: Objection, Your Honor. [The DPD is] arguing facts not in evidence at this point.
>
> THE COURT: I'll allow you to question him further in this area, [DPD], when you cross-examine the officer.

(Emphases added.) Anger refused the blood test and stated that he would only submit to one under protest. A forcible extraction, performed by a nurse, was undertaken to draw a blood sample from Anger. Anger was not under arrest at the time of the extraction, nor was he placed under arrest at any point that night.

During the DPA's redirect examination of Officer Silva, the DPD, the DPA, and the district court discussed the testimony pertaining to whether Anger had been injured:

> [DPD]: Your Honor, *I would just like to renew my objection in regards to the hearsay of whether or not there was injury. That obviously goes to the truth of the matter asserted ... in terms of the applicable statutes that were cited in the motion. The question of whether or not there was injury is highly relevant and essential to this motion.*
>
> THE COURT: Okay. (Inaudible)
>
> [DPD]: (Inaudible) the State should have subpoenaed the doctor to verify whether or not it was told to Officer Silva that an injury ... did occur or not. We just have Officer Silva's testimony, and he doesn't even recall the doctor's name.
>
> THE COURT: [DPA]?
>
> [DPA]: Your Honor, at this point, the State's going to argue that ... *it's not really going to the truth of the matter asserted. It is the officer's ... state of*

9. Actually, HRS § 291-4, *see supra* note 2, was the statute defining the offense of driving under the influence of intoxicating liquor. Officer Silva was likely referring to the mandatory testing provision contained within HRS § 286-163(c),

*see supra* note 4, which authorizes police to recover a sample of blood from the driver of a vehicle involved in a collision that results in injury or death.

mind whether there was an injury or there wasn't an injury. And that's ... the purpose[ ] of what we're ... bringing it in for right now.

THE COURT: *I'm going to overrule the ... objection.*

[DPD]: If we could have a continuing objection in regards to the hearsay issue. There's clearly a[n] issue of trustworthiness as well, your Honor.

THE COURT: Okay....

(Emphases added.) Officer Silva also testified that Anger stated that he had consumed three Ali'i brand beers that night and that Anger's admission was a factor in his determination that Anger had violated HRS § 291-4, *see supra* note 2.

Following arguments by the prosecution and defense, the district court orally entered the following findings of fact and conclusions of law:

... [Officer Silva] talked to the treating physician that particular evening and found out, in fact, that Mr. Anger did have injuries. [Officer Silva] said [that] because of this injury he went ahead and decided to have Mr. Anger's blood drawn at this particular time.

[Officer Silva] said also that, while talking to Mr. Anger, Mr. Anger did relate to him that he had three Ali['']i brand beers. So, the officer went ahead and said that he also noticed that Mr. Anger not only had the odor of liquor on his breath but that he had red, watery eyes. However, he could not determine whether the red, watery eyes were due to the accident or due, perhaps, to the alcohol.

. . . .

The [c]ourt also heard from Mr. Anger who said he was at the hospital. He said he ... was taken for X rays, [which] came back negative, he had, apparently, no injuries; that he was conscious the whole entire time; that once he was brought out into the ER area, apparently, [a] nurse came up to him, informed him of the discharge papers. He went ahead and signed the discharge papers. Apparently a taxi was called [for] him to leave.

And after he signed the papers, that's when Officer Silva came down and informed him that his blood ... needed to be taken. Further, ... [Anger] did tell [Officer Silva] that he did not want his blood taken, that he was refusing to have his blood taken; that [Officer Silva] went ahead and grabbed his arm and that the nurse eventually was able to extract a blood sample from Mr. Anger.

All right. [The][c]ourt is aware, under [HRS § ] 286-163 [, *see supra* note 4,] ... even by its title, it says [*"*]applicable scope of part—mandatory testing in the event of a collision resulting in injury or death.[*"*] Now, I understand as well, when you compare the progeny cases under *Wilson* and the [Administrative Driver's License Revocation (ADLR) ] sanctions, that there may be some question here about what was told to Mr. Anger and that he was able to do voluntarily, knowingly, intelligently.

However, the [c]ourt is aware as well, when you look under [HRS § ] 286-163, I think comparing that with [HRS § ] 286-151 [, *see supra* note 5], when you're comparing forcible extraction versus ADLR sanctions, that we are looking at apples and oranges, ... and the two don't mix, necessarily.

Subsection [ (a) ] [of HRS § 286-163] does say [*"*]nothing in this part shall be construed to prevent the police from obtaining a sample of breath, blood, or urine as evidence of intoxication or influence of drugs from the driver of any vehicle involved in a collision resulting in injury to or the death of any person[*"*]—it says any person, doesn't say the driver, it doesn't say the person involved or the person in the other vehicle, it says person.

So the [c]ourt construes that to mean that to be the driver of the vehicle, such as [Anger], or perhaps a person in another vehicle who was injured as well.

Now, when you look further under subsection [ (c) ] [of HRS § 286-163], it says: In the event of a collision. And, obviously, here we have a motor vehicle accident upcountry, so there was a collision. Secondly: *Did it result in injury or death[?]*

*Per the officer from his preliminary investigation with the doctor there was injury.*

And [HRS § 286–163(c) ] states further: And the police had probable cause to believe that a person involved in the incident has committed a violation. And I think for these purposes the only [statute] that is applicable would be [HRS § ] 291–4....

[HRS § 286–163(d) ] states further: The police shall—and I reiterate[,] it says shall, it doesn't say may, it doesn't say perhaps, it says: shall request the sample of blood or urine be recovered from the driver or any other person suspected of committing a violation of Section 291–4. And apparently the request, doesn't say necessarily of the defendant, but it says: the request shall be made to the hospital ... or medical facility treating the person from whom the police request the blood or urine be recovered.

*So, based on [HRS § ] 286–163, the [c]ourt does find that the procedure on the particular evening, based on the facts that there was a collision, there was injury to Mr. Anger; there was probable cause to believe Mr. Anger was involved in [a violation of HRS § ] 291–4, that being the observations of intoxication by ... both officers, as well as [Anger] admitting that he drank three Ali[']i brand beers, the [c]ourt does find that the police had reason to go ahead and draw blood from the ... driver, from Mr. Anger.*

So, based on those factors, the [c]ourt is going to go ahead and deny the motion to suppress the results of the blood test.

(Emphases added.)

Following the district court's denial of his motion to suppress, Anger entered a conditional plea of no contest on November 2, 2001, reserving the right to appeal the district court's denial of his motion to suppress.[10] On November 30, 2001, Anger timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

### A. Motion To Suppress

 "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case.... Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations, some quotation signals, and some ellipsis points omitted). Accordingly, "[w]e review the circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.' " *Id.* (citations and some quotation signals omitted).

*State v. Hauge*, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003) (quoting *State v. Locquiao*, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting *State v. Poaipuni*, 98 Hawai'i 387, 392, 49 P.3d 353, 358 (2002))).

### B. The Admissibility Of Evidence

 The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue. *State v. Pulse*, 83 Hawai'i 229, 246, 925 P.2d 797, 814 (1996). When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court. *Id.* at 246–47, 925 P.2d at 814–15 (citations omitted).

*State v. Peseti*, 101 Hawai'i 172, 178–9, 65 P.3d 119, 125–6 (2003) (quoting *State v. Cordeiro*, 99 Hawai'i 390, 403–04, 56 P.3d 692, 705–06, *reconsideration denied*, 100 Hawai'i 14, 58 P.3d 72 (2002)).

### C. Statutory Interpretation

 "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara*, 81 Hawai'i 324, 329,

---

10. Anger was originally charged, in Count II, with inattention to driving without due care, in violation of HRS § 291–12. Upon entry of Anger's conditional plea of no contest, however, the prosecution amended Count II to a charge of lack of due care, in violation of Maui County Code § 10.52.010.

916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata*, 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994)....

*Gray v. Administrative Director of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Kaua*, 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003) (quoting *State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit*, 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich*, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

### III. DISCUSSION

A. *The District Court Erred In Denying Anger's Motion To Suppress Because The Testimony of Officer Silva Constituted Inadmissible Hearsay.*

Anger contends that the district court erred in (1) finding that he had been injured, based upon the inadmissible hearsay testimony of Officer Silva, (2) determining that HRS § 286–163, *see supra* note 4, authorized the forcible, involuntary extraction of his blood, and (3) ultimately denying his motion to suppress his blood test results. Anger argues that Officer Silva's testimony that a physician told him that Anger was injured constituted hearsay and that the district court erred in ruling, over Anger's objection, that the testimony was admissible under the "state of mind" exception to the general prohibition against hearsay.[11] We agree.

11. As we have noted, Anger also argues on appeal (1) that the district court erred in concluding that HRS § 286–151, *see supra* note 5, and this court's decision in *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999), were inapposite to the disposition of his motion, (2) that HRS § 286–163, *see supra* note 4, does not permit the forcible extraction of a blood sample, and (3) that because he was not under arrest and did not give consent, the blood draw amounted to an unconstitutional search and seizure. This court's decision in *State v. Entrekin*, 98 Hawai'i 221, 47 P.3d 336 (2002), renders Anger's points of error moot. In *Entrekin*, we stated that

... HRS § 286–151 authorizes a breath, blood, or urine test, pursuant to the implied consent statute, "only after ... [a] lawful arrest[ ] and ... [t]he [arrested] person has been informed by a police officer of the sanctions [imposed]

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE 801(3) (1993 & Supp.2003). HRE Rule 802 (1993) provides that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute." In the present matter, Officer Silva testified that an anonymous physician advised him that Anger sustained injuries. Anger objected to Officer Silva's testimony regarding the physician's statement on hearsay grounds. The prosecution argued that Officer Silva's testimony was not being offered to prove the truth of the matter asserted, but rather to establish "the officer's state of mind." The district court overruled Anger's objection, and Officer Silva was allowed to testify that the physician had advised him that Anger had sustained injuries.

■ HRE Rule 803(b)(3) (1993) sets forth the "state of mind" exception to the hearsay rule, which allows the evidentiary admission of

statement[s] of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

under part XIV and [HRS §§ ] 286–151.5 and 286–157.3." In addition, HRS § 286–151.5 provides that, "[i]f a person ... refuses to submit to a breath or blood test, none shall be given, except as provided in [HRS § ] 286–163[.]" On the other hand, HRS § 286–163 provides that, in the event of a collision resulting in injury or death, "nothing in this part shall be construed to prevent the police from obtaining a sample of breath, blood, or urine as evidence of intoxication or influence of drugs[.]" (Emphases added.) The plain language of HRS § 286–163 is unambiguous: the police are authorized to obtain a blood sample pursuant to HRS § 286–163 notwithstanding any other provision of the implied consent statute, including the requirement that a driver be lawfully arrested before administering a test pursuant to HRS § 286–151.
. . . .

(Emphases added). "At the outset, we point out that '[t]he state of mind exception, by definition, focuses on the sensory impressions of *the declarant* where those impressions are relevant to an issue in the case.' " *State v. Canady*, 80 Hawai'i 469, 476, 911 P.2d 104, 111 (App.1996) (quoting *State v. Feliciano*, 2 Haw.App. 633, 636, 638 P.2d 866, 869 (1982)) (emphasis added). The prosecution's argument thus overlooks the fact that the state of mind exception to the hearsay rule applies only to a "statement of the *declarant's* then existing state of mind," HRE Rule 803(b)(3) (emphasis added), and the anonymous physician, *not* Officer Silva, was the declarant of the statement that Anger had sustained injuries. Nevertheless, Officer Silva's testimony that an anonymous physician had told him that Anger had sustained injuries was the purported and sole statutory predicate, under HRS § 286–163, for the involuntary draw of Anger's blood. Therefore, Officer Silva's testimony was obviously adduced to prove the truth of the matter asserted, inasmuch as the legal justification under HRS § 286–163(c) for such an involuntary draw depended upon proving that Anger had, in fact, suffered injury in the motor vehicle accident. Officer Silva's testimony was the only evidence adduced at the suppression hearing that was probative of whether Anger in fact had been injured in the motor vehicle accident: the anonymous physician was not called to testify at the suppression hearing; no evidence was adduced as to the nature of Anger's alleged injuries; and no medical records were proffered.

In light of the above, we hold that HRS ch. 286, part VII does not require the police to comply with the prerequisites of HRS § 286–151 in order to obtain breath, blood, or urine samples pursuant to HRS § 286–163.
98 Hawai'i at 229–30, 47 P.3d at 344–345 (brackets and emphases in original). Furthermore, *Entrekin* held that "the nonconsensual extraction of a blood sample from Entrekin pursuant to HRS § 286–163 violated neither the fourth amendment to the United States Constitution nor article 1, section 7 of the Hawai'i Constitution, notwithstanding the fact that the police had not placed him under arrest prior to obtaining the blood sample." 98 Hawai'i at 233, 47 P.3d at 348. Inasmuch as we hold that the district court erred in denying Anger's motion to suppress, we need not reach the question whether the forcible extraction of a blood sample from Anger was conducted in a reasonable manner.

HRS § 286–163 authorizes an involuntary blood draw *only* "in the event of a collision resulting in injury or death." Thus, the plain language of the statute requires that there be an actual injury, a fact that the prosecution bore the burden of proving in order to avail itself of HRS § 286–163. Although lay persons may be competent to testify as percipient witnesses to the presence of a personal injury, Officer Silva never purported to testify regarding his personal perceptions of Anger's condition. To the contrary, the prosecution used Officer Silva as a conduit for injecting into the record what a presumably available, out-of-court declarant had allegedly stated regarding the very fact at issue in the present matter, *i.e.*, whether Anger had sustained injury as a result of the motor vehicle accident. Hence, Officer Silva's belief, reasonable or otherwise, that Anger had been injured (that is, his "state of mind"), without more, was immaterial in evaluating whether the requirements of HRS § 286–163 had been met.

Absent an injury, Officer Silva was required to comply with the statutory provisions of HRS § 286–151, *see supra* note 5, which authorizes a breath, blood, or urine test, pursuant to the implied consent statute, "only after … [a] lawful arrest[ ] and … [t]he [arrested] person has been informed by a police officer of the sanctions [imposed] under part XIV and [HRS §§ ] 286–151.5 and 286–157.3" and HRS § 286–151.5, which provides that, "[i]f a person … refuses to submit to a breath or blood test, none shall be given, except as provided in [HRS § ]

286–163[.]" Absent proof of an actual injury, Officer Silva was not authorized to draw Anger's blood pursuant to HRS § 286–163, and the blood test results of the sample he obtained at the hospital were inadmissible as evidence against Anger.

We therefore hold that Officer Silva's testimony that an anonymous physician had stated that Anger had sustained injury as a result of his motor vehicle accident was inadmissible hearsay. Accordingly, we hold that the district court erred in denying Anger's motion to suppress the results of his blood test in sole reliance upon Officer Silva's inadmissible hearsay testimony.

B. *The Prosecution Is Judicially Estopped From Arguing On Appeal That The HRE Do Not Govern Hearings On Motions To Suppress.*

The prosecution argues, assuming *arguendo* that the district court erred in its ruling regarding the admissibility of the anonymous physician's out-of-court declaration, that the HRE do not govern pretrial hearings on motions to suppress at all. The prosecution theorizes that the district court was ruling on a preliminary question of fact to which the HRE do not apply, pursuant to HRE Rule 104(a), *see supra* note 7, and Rule 1101(d)(1), *see supra* note 6.[12] We decline to address the merits of the argument, inasmuch as the prosecution is judicially estopped from taking on appeal a position contrary to and inconsistent with the one that it

---

**12.** Alternatively, the prosecution contends that Officer Silva's testimony was admissible under HRE Rule 803(b)(24), *see supra* note 8, and that the district court could have concluded that Anger was injured based on the severity of the accident alone. The prosecution's arguments are without merit.

HRE 803(b)(24) provides in relevant part that a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The plain language of HRE Rule 803(b)(24) requires the prosecution to provide Anger notice of

its intention to employ the hearsay statement, including the name and the address of the declarant. The prosecution did not provide Anger with notice that Officer Silva would testify regarding the physician's alleged statement, nor did it provide Anger with the physician's name or address prior to or during the hearing. The prosecution's contention that "the doctor could have been called to verify Officer Silva's statement[,] and Officer Silva had no reason to know that the doctor would not be called" begs the question and fails to cure the prosecution's noncompliance with HRE Rule 803(b)(24). Indeed, the prosecution *should* have called the physician to testify.

As for the "severity" of the accident alone, the record, as described *supra* in section I, is devoid of *any* evidence—direct or circumstantial—that Anger sustained an injury.

took at the hearing on the motion to suppress.

Pursuant to the doctrine of judicial estoppel,

[a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

*Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (citation omitted).

Not only did the prosecution fail to argue at Anger's suppression hearing that the HRE did not govern hearings on motions to suppress, but it expressly proceeded on the basis that the proceeding was subject to the rules of evidence. The entire hearing on Anger's motion to suppress was conducted in compliance with the HRE; both Anger and the prosecution raised numerous objections grounded in the HRE throughout the proceeding, and the district court made rulings sustaining or overruling those objections based upon the HRE. *See* Transcript of Proceedings 7/27/01 at 4, 12, 15, 17, 20–22, 24, 29, 31, 37, 39, 40, 42, 43, 45, 49, 51. Thus, the prosecution impliedly conceded that the HRE governed hearings on motions to suppress by consistently relying on them throughout the hearing. The prosecution is therefore judicially estopped from asserting on appeal that the HRE do not govern suppression hearings.

## IV. *CONCLUSION*

In light of the foregoing analysis, we reverse the district court's order denying Anger's motion to suppress, vacate the subsequent judgment of conviction as to Count I, remand for further proceedings consistent with this opinion as to that count, and affirm the judgment of conviction as to Counts II and III.