Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000476
04-JUN-2020
07:46 AM

NO. CAAP-19-0000476

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellant, v.
LEAH SKAPINOK, Defendant-Appellee


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CASE NO. 1DTA-19-01048)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

This case, like another case that was recently decided by this court, involves the well-established constitutional principle that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant unless the defendant has first been advised of his or her Miranda rights.  See State v. Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907 (Haw. App. April 8, 2020); see also Miranda v. Arizona, 384 U.S. 436 (1966).  This rule applies in all criminal matters, even when the alleged crime is a misdemeanor traffic offense.  That said, whether the questioning of a defendant constitutes a custodial interrogation is dependent on the totality of the circumstances and, in many instances, persons who are temporarily detained pursuant to a

traffic stop are not in custody for the purposes of <u>Miranda</u>.  In addition, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him or her, such as when a defendant has performed a field sobriety test and testimony regarding the defendant's physical characteristics of coordination is offered against the defendant.

The defendant in this case was arrested for and charged with Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**).  As the Plaintiff-Appellant State of Hawaiʻi (**State**) conceded in the trial court, the defendant in this case was in custody shortly after she was stopped by a police officer.  As set forth in <u>Saqapolutele-Silva</u>, as applied in this case, the defendant's physical performance on a field sobriety test was not testimonial, and the defendant's responses to whether she would participate in the test and whether she understood the instructions were attendant to legitimate police procedures, and should not have been suppressed.  We further hold, however, that the medical rule-out questions posed by the officer were reasonably likely to elicit an incriminating response, and that the District Court did not err in suppressing those statements. Finally, for the reasons stated below, we conclude that a statement made by the defendant in response to being asked whether she would participate in the test and being told that she was not being asked whether she was drinking, was not the result of custodial interrogation and should not have been suppressed.

The State appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on June 3, 2019 (**Judgment**), in the District Court of the First Circuit, Honolulu Division (**District Court**),[1] which granted Defendant-Appellee Leah Skapinok's (**Skapinok's**) Motion to Suppress Statements. The State also challenges Conclusions of Law (**COLs**) 7, 10, 13, and 15 through 19 of the District Court's July 8, 2019 Findings of Fact and Conclusions of Law and Order Granting Defendant's Motion to Suppress Statement, as refiled on February 26, 2020 (**Suppression Order**).[2]

I.   BACKGROUND

On August 18, 2019, at about 11:02 p.m., Honolulu Police Department (**HPD**) Officer William Meredith (**Officer Meredith**) observed Skapinok's vehicle pass his location.[3] Officer Meredith observed Skapinok speeding eastbound on King Street, then weaving through traffic after turning uphill on Ward Avenue, crossing a solid white line as she turned onto the H-1 freeway on-ramp, and then crossing three lanes of the freeway to the left without a turn signal and traveling significantly faster than the posted speed limit. When Officer Meredith turned on his

---

[1]   The Honorable Summer Kupau-Odo presided.

[2]   Two pages of the Suppression Order were missing from the copy filed electronically on July 8, 2019, and were included when the Suppression Order was refiled electronically on February 26, 2020.

[3]   The background facts are taken primarily from the District Court's Findings of Fact (**FOFs**), which are set forth in the Suppression Order, and which are not challenged on appeal. Some HPD bodycam footage, as well as HPD testimony, is included in the record on appeal.

flashing blue lights, Skapinok stopped on the freeway with the majority of her vehicle in the far left lane of travel.[4]

Once Skapinok's vehicle was stopped off of the freeway, Officer Meredith again approached the driver's side of Skapinok's vehicle and informed Skapinok he was pulling her over for speeding.  The officer noticed a strong odor of alcohol coming from Skapinok and asked her if she would be willing to participate in a Standardized Field Sobriety Test (**SFST**). Skapinok repeatedly denied drinking any alcoholic beverages. Officer Meredith repeatedly told Skapinok that if she refused to participate in the SFST, he would put her under arrest for suspicion of Operating a Vehicle Under the Influence of an Intoxicant, and she eventually agreed to participate.  Skapinok was not free to leave while she waited for a second officer, HPD Corporal Ernest Chang (**Corporal Chang**) to arrive.

When Corporal Chang arrived on the scene, Officer Meredith informed him that he observed Skapinok driving at a high rate of speed.  Corporal Chang suggested to Officer Meredith that Skapinok was driving recklessly.  Corporal Chang then informed Skapinok that he was there to offer her the SFST and asked her if she wanted to take it.  He then told her, "there's already enough to arrest you just for the reckless driving alone."  When Skapinok questioned that her speeding was cause to arrest her for reckless driving, Corporal Chang again told her, *inter alia*, that

_____

[4]  Officer Meredith told Skapinok he was pulling her over for speeding and then directed her to pull off the freeway for safety purposes while he blocked traffic with his police vehicle.

based on what Officer Meredith observed, she may be arrested for reckless driving, too.

Skapinok exited her vehicle and Corporal Chang then administered the SFST.  Prior to administering the SFST, Corporal Chang asked Skapinok seven preliminary questions, which are known as medical rule-out questions:  Do you have any physical defects or speech impediments; are you taking any medications; are you under the care of a doctor or dentist for anything; are you under the care of an eye doctor; are you epileptic or diabetic; do you have an artificial or glass eye; and are you blind in either eye. Skapinok answered no to most of the questions, but informed the officers that she was taking Wellbutrin and seeing a doctor for depression.[5]  Corporal Chang later testified that medical rule-out questions are intended to see if the results of the SFST are likely caused by an intoxicant, as opposed to a medical or physical condition.

The SFST consists of three tests, and prior to administering them, Corporal Chang gave Skapinok instructions, asked her if she understood the instructions, and asked her if she had any questions.  Skapinok was not advised of her Miranda rights at any point.  After the SFST was performed, Skapinok was arrested for OVUII and Reckless Driving.[6]

---

[5]    At the suppression hearing, Corporal Chang testified that he is aware that ingesting Wellbutrin with alcohol can cause side effects similar to intoxication.

[6]    When asked if Skapinok was arrested for both the "DUI" and reckless driving, Officer Meredith responded in the affirmative.  The Complaint filed in the District Court did not include a reckless driving charge.

Skapinok filed, *inter alia*, a motion to suppress statements.  At the hearing on the motion to suppress, Officer Meredith and Corporal Chang testified.  In conjunction with their testimony, portions of each officer's bodycam footage was played and entered into evidence.  After the evidentiary portion of the hearing, defense counsel argued that from the time Skapinok was stopped, Officer Meredith had probable cause to arrest her for Reckless Driving, Officer Meredith told Skapinok three times that if she did not participate in an SFST he would place her under arrest for OVUII, and Skapinok was in custody before Corporal Chang even arrived on the scene.  Counsel then argued that asking Skapinok whether she would participate in an SFST, whether she understood the SFST instructions, and the medical rule-out questions were all reasonably likely to elicit incriminating responses and constituted a custodial interrogation.

In response, the State began by stating that it did not dispute and would concede that there was probable cause to arrest Skapinok for Reckless Driving at the time she was stopped.  The prosecutor then argued, *inter alia*, that "no interrogation occurred and so therefore there was no custodial interrogation although the defendant was in custody."  The prosecutor expanded on the argument that there was no interrogation, but at no point argued that Skapinok was not in custody.

After the hearing concluded, the District Court found (and concluded) that Officer Meredith had probable cause to arrest or cite Skapinok for OVUII and/or Reckless Driving while she was still sitting in her vehicle, that the officers did not

need the result of the SFST to arrest her for OVUII and/or

Reckless Driving, Skapinok was not free to leave, and legal

custody had attached.  The District Court's COLs that are

challenged on appeal state as follows:

> 7.    At the time that Defendant was sitting in her vehicle, prior to the administration of the SFST, she was not free to leave, she was the focus of an OVUII investigation and officers had probable cause to arrest her for OVUII and/or Reckless Driving.  Officer Meredith and Corporal Chang did not need the results of the SFST to arrest Defendant for OVUII and/or Reckless Driving.  Legal custody had attached.
>
> . . . .
>
> 10.   Asking Defendant if she was willing to participate in the SFST constituted custodial interrogation because she was not free to leave, she was the focus of an OVUII investigation and officers had probable cause to arrest her.  Asking a person if they would be willing to participate in a SFST is reasonably likely to elicit an incriminating response.  For example, refusing to participate in the SFST can be used at trial to show consciousness of guilt pursuant to State v. Ferm, 94 Haw. 17 (2000).
>
> . . . .
>
> 13.   The MRO questions in this case constituted custodial interrogation and were reasonably likely to elicit incriminating responses.  In this particular case, the MRO questions did elicit incriminating responses. Defendant stated that she was taking the medication Wellbutrin.  Alcohol ingested in conjunction with medication which causes intoxication is a basis for OVUII.  State v. Vliet, 91 Haw. 288 (1999), as alcohol only has to be a contributing factor in impairment.
>
> . . . .
>
> 15.   Corporal Chang's questioning during the SFST as to whether Defendant understood the instructions was reasonably likely to elicit an incriminating response. If Defendant answered "no," it would be a commentary on her mental faculties and ability to understand the instructions.  If a [sic] Defendant answered "yes," and did not perform the test as instructed, her "yes" response could be used against her at trial to show her mental faculties were impaired.
>
> 16.   Defendant's consent to the SFST is suppressed and all evidence obtained after the consent i[s] fruit of the poisonous tree.
>
> 17.   The MRO questions are suppressed and all evidence obtained by HPD after the MRO questions are suppressed as fruit of the poisonous tree.

18.  Defendant's answer that she understood the instructions during the SFST is suppressed and the SFST is suppressed as fruit of the poisonous tree.

19.  Defendant's statements while she was still in the vehicle in response to Officer Meredith's statement that he was not asking her whether she was drinking is suppressed.

## II.  POINT OF ERROR ON APPEAL

The State raises a single point of error on appeal, contending that the District Court erred in the challenged COLs and the Suppression Order because Skapinok was not in custody or seized until after she took an SFST and was arrested for OVUII, in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018).[7]

Tacitly acknowledging that it previously conceded that Skapinok was in custody before she exited her vehicle, the State points to its argument to the District Court that "no interrogation occurred and so therefore there was no custodial interrogation."

## III. APPLICABLE STANDARDS OF REVIEW

The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

---

[7]  HRS § 291E-61(a) states, in relevant part:

§ **291E-61  Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

State v. Estabillio, 121 Hawaiʻi 261, 269, 218 P.3d 749, 757 (2009) (citations omitted).

A ruling on a motion to suppress is reviewed *de novo*, and the appellate court must look at the entire record on appeal to determine whether the ruling was right or wrong.  State v. Joseph, 109 Hawaiʻi 482, 493, 128 P.3d 795, 806 (2006).  The District Court's COLs are also reviewed *de novo*.  See id.

IV.  DISCUSSION

As it did in Sagapolutele-Silva, in this appeal, the State contends that the District Court erred in suppressing Skapinok's responses to, *inter alia*, the medical rule-out questions because she was not in custody or interrogated before the SFST had been administered and she was arrested.

In Sagapolutele-Silva, we examined the Hawaiʻi Supreme Court's decisions in State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984), and State v. Kaleohano, 99 Hawaiʻi 370, 56 P.3d 138 (2002), before turning to the question of whether Sagapolutele-Silva's suppressed statements stemmed from custodial interrogation.  Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, slip op. at 10-12 (Haw. App. April 8, 2020).  In Wyatt, where the defendant was briefly detained and therefore seized, but not in custody or coercively questioned, the supreme court held that Miranda warnings were not required before she was asked if she had been drinking.  Wyatt, 67 Haw. at 297-301, 687 P.2d at 548-50.  The supreme court further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical

characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct.  Id. at 302-03, 687 P.2d at 551.  In Kaleohano, the supreme court noted that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145.  The court concluded that because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not subject the defendant to sustained and coercive questioning, the officer was not required to give the defendant a Miranda warning prior to asking her if she had been drinking.  Id. at 377-78, 56 P.3d at 145-46.

Here, however, the State conceded in the District Court that Skapinok was in custody prior to the suppressed statements. Thus, this issue is waived on appeal, and we cannot conclude that the District Court's determination that Skapinok was not free to leave and legal custody had attached, as set forth in COL 7, is wrong.  See, e.g., State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) (stating the general rule that if a party fails to raise an argument at trial, that argument will be deemed to be waived on appeal); State v. Harada, 98 Hawaiʻi 18, 30, 41 P.3d 174, 186 (2002) (concluding that the prosecution failed to properly preserve its exigent circumstances claim and thus waived it); State v. Anger, 105 Hawaiʻi 423, 432-33, 98 P.3d 630, 639-40 (2004) (applying the doctrine of judicial estoppel in declining to address an argument by the prosecution-appellee that was

inconsistent with the position the prosecution had taken in the trial court); State v. Adler, 108 Hawaiʻi 169, 175, 118 P.3d 652, 658 (2005) (defendant judicially estopped from claiming on appeal he possessed marijuana by prescription when he conceded in motion to dismiss it cannot be prescribed).  Accordingly, the only issue that is properly before us is whether the questions resulting in the suppressed statements constituted interrogation.

In State v. Kazanas, 138 Hawaiʻi 23, 38, 375 P.3d 1261, 1276 (2016), the supreme court reaffirmed that "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'"  (Citations and brackets omitted.)

Similar to the situation in Saqapolutele-Silva, the investigation for OVUII in this case constituted a separate and distinct investigation, albeit related to the initial traffic stop, and it required an independent reasonable suspicion. See generally Estabillio, 121 Hawaiʻi at 273, 218 P.3d at 761.  There was reasonable suspicion that Skapinok was operating a vehicle while intoxicated based upon her driving; her red, watery, and glassy eyes; and the smell of alcohol. State v. Barrickman, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (there was reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath). However, red and glassy eyes alone and imperfect driving are insufficient to establish probable cause to arrest a person for OVUII.  Kaleohano, 99 Hawaiʻi at 377-78, 56 P.3d at 145-46.

Thus, the District Court erred to the extent that it concluded otherwise in COL 7.

As noted by the supreme court in Kernan v. Tanaka, 75 Haw. 1, 38 n.23, 856 P.2d 1207, 1226 n.23 (1993):

> Usually, the police administer a field sobriety test consisting of specific procedures when a driver has been stopped as a DUI suspect. If a driver does not exit voluntarily, the police must order him or her out of the vehicle even though probable cause to arrest may not have been established. Should the suspect fail the test, an arrest will ensue. Thus, it is the test failure that provides the police with probable cause to arrest. We do not require the police to have probable cause to arrest prior to the administration of the field sobriety test because such a requirement unduly burdens law enforcement.

"Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." Wyatt, 67 Haw. at 302, 687 P.2d at 551 (citation and brackets omitted). Here, Officer Meredith did not initially have probable cause to arrest Skapinok for OVUII based upon noticing she had red, watery, and glassy eyes, and an odor of alcohol about her. And, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against her, such as when a driver is asked to participate in a SFST. Id. As noted above, the Wyatt court held that since performance on an SFST was neither communication nor testimony, the trial court did not err by refusing to suppress the officer's SFST observations. Id. at 301-03, 687 P.2d at 550-51.

In addition, in Pennsylvania v. Muniz, 496 U.S. 582, 603-04 (1990), the United States Supreme Court rejected the contention that Miranda warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because

the "focused inquires were necessarily 'attendant to' the police procedure held by the court to be legitimate." Accordingly, asking Skapinok whether she understood the instructions to the SFST did not implicate her right against self-incrimination. Thus, we conclude that the District Court erred by suppressing Skapinok's response to whether she would participate in the SFST, whether she understood the instructions to the SFST, and the officer's observations of her performance on the SFST. Therefore, COLs 10, 15, 16, and 18 are wrong.

However, due to Skapinok being in custody, the medical rule-out questions, which were asked in relation to the OVUII investigation here, constituted interrogation warranting Miranda warnings. As other courts have observed, the failure to provide a Miranda warning when an individual is in custody for one crime will taint an interrogation even if the interrogation relates to a different crime. See Mathis v. United States, 391 U.S. 1, 2, 4-5 (1968) (noting that there is "nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody"); see also, e.g., People v. Bejasa, 140 Cal. Rptr. 3d 80, 91 (Cal. Ct. App. 2012); State v. Lawler, No. L-96-223, 1997 WL 77511, **1-2 (Ohio Ct. App. Feb. 21, 1997); State v. Lien, No. 32443-5-III, 2016 WL 4267689 (Wash. Ct. App. Aug. 11, 2016). Here, Officer Meredith testified that Skapinok was not free to leave during his encounter with her in connection with his investigation into OVUII. In fact, the bodycam footage confirms that Officer Meredith told Skapinok that she would be

arrested for OVUII if she did not participate in the SFST. Skapinok was already in custody at the time that the medical rule-out questions were posed.

As stated above, "the touchstone in analyzing whether interrogation has taken place is whether the police officer should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant."  Kazanas, 138 Hawaiʻi at 38, 375 P.3d at 1276 (citation and internal quotation marks omitted).  Relying upon Rhode Island v. Innis, 446 U.S. 291 (1980), Kazanas reiterated that "interrogation consists of any express question - or, absent an express question, any words or conduct - that the officer knows or reasonably should know is likely to elicit an incriminating response."  Id. (citation and internal quotation marks omitted).  An incriminating response is any response, either inculpatory or exculpatory.  Innis, 446 U.S. at 301 n.5. In contrast, a physical inability to articulate words in a clear manner due to lack of muscular coordination of the tongue and mouth is not testimonial evidence for purposes of self-incrimination.  Muniz, 496 U.S. at 590-91.

In this case, the District Court's FOFs 17 and 18 identified the medical rule-out questions posed to Skapinok as follows:

> i.    Do you have any physical defects or speech
>       impediments?
> ii.   Are you taking any medications?
> iii.  Are you under the care of a doctor or dentist
>       for anything?
> iv.   Are you under the care of an eye doctor?
> v.    Do you have an artificial or glass eye?
> vi.   Are you epileptic or diabetic?
> vii.  Are you blind in either eye?

Based on, *inter alia*, our analysis in Sagapolutele-Silva, we conclude that the medical rule-out questions posed to Skapinok were reasonably likely to elicit an incriminating response and, therefore, constituted interrogation.  See Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, slip op. at 17-20 (Haw. App. April 8, 2020).

Skapinok was in custody.  She had not been given Miranda warnings.  The medical rule-out questions constituted interrogation.  Thus, we conclude that her responses to those questions should have been suppressed and the District Court did not err in so concluding in COLs 13 and 17.

Finally, we turn to whether the District Court erred in COL 19, in which the District Court suppressed Skapinok's statements while she was still in her vehicle in response to Officer Meredith's statement that he was not asking her whether she was drinking.  The subject exchange, as recorded on the bodycam footage, began as follows:

> OFFICER MEREDITH:  So besides speeding I can smell a lot of alcohol coming from you.
>
> THE DEFENDANT:  Me?
>
> OFFICER MEREDITH:  And you got red, glassy eyes.
>
> THE DEFENDANT: I --
>
> OFFICER MEREDITH: Would you like to do a field sobriety test?
>
> THE DEFENDANT: No. I'm -- I just got off work.  I'm in my work uniform.
>
> OFFICER MEREDITH:  Okay.
>
> THE DEFENDANT:  I swear I haven't been drinking.
>
> OFFICER MEREDITH:  So it is voluntary.  Like I just explained to you, I'm not gonna force you to do a field sobriety test.  It's up to you.  But if you do refuse, I just gotta inform you that you will be

placed under arrest under suspicion of Operating a
Vehicle Under the Influence of an Intoxicant.  Okay?

THE DEFENDANT:  I haven't been drinking.

**OFFICER MEREDITH:  Okay.  I'm not asking you if you've
been drinking.  I'm telling you what I'm observing.
I'm asking you if you want to do a test.  I did not
ask you once if you've been drinking.  Okay.  Do you
understand?**

THE DEFENDANT:  (No audible response.)

OFFICER MEREDITH:  So do you understand what I'm
saying?  If you refuse my request to do a field –
standardized field sobriety test, you will be placed
under arrest.

THE DEFENDANT:  (Indiscernible.)

OFFICER MEREDITH:  Okay.  So again now I gotta offer
it to you.  It's up to you.  If you refuse, like I
said, you will get arrested.

(Emphasis added).

Generally, informing a defendant of the reason for
being stopped or arrested does not constitute custodial
interrogation likely to elicit an incriminating response.  See,
e.g., United States v. Benton, 996 F.2d 642, 643-44 (3d Cir.
1993); see also, e.g., State v. Ikaika, 67 Haw. 563, 565, 698
P.2d 281, 283 (1985) (spontaneous admissions, made in the absence
of any police questioning, were admissible); cf. Kazanas, 138
Hawaiʻi at 38, 375 P.3d at 1276 (asking the defendant how his
night was going, under the circumstances of his detainment, was
reasonably likely to elicit his incriminating response and
therefore constituted interrogation).[8] Without more, simply

_____

[8]      Interrogation does not include "words or actions on the part of
the police [that are] normally attendant to arrest and custody."  Innis, 446
U.S. at 301.  "[W]hen an officer informs [a suspect] of [the] circumstances"
of his arrest "or explain[s] . . . evidence against him," "this information
may be considered normally attendant to arrest and custody."  United States v.
Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994) (quoting United States v.
Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984)); see also id. ("[I]nterrogation
is not so broad as to capture within Miranda's reach all declaratory
statements by police officers concerning the nature of the charges against the
suspect and the evidence relating to those charges."  (alteration in original)
(continued...)

informing a person of the reason for his or her arrest does not constitute interrogation.

Here, Officer Meredith informed Skapinok that he stopped her for speeding and that he smelled alcohol and observed that she had red, glassy eyes.  He asked Skapinok if she would like to participate in an SFST, and she twice denied she had been drinking.  Then, Officer Meredith stated, *inter alia*, that he was not asking if she had been drinking, but wanted to know if she would participate in an SFST.  Here, Officer Meredith's subject statement was an attempt to redirect Skapinok to solely answering whether or not she would take the SFST, which we conclude constituted words or actions normally attendant to a permissible OVUII investigation and, as discussed above, simply inquiring as to whether a defendant is willing to participate in an SFST is not interrogation.  We cannot conclude that Officer Meredith informing Skapinok that he was not asking her if she was drinking was reasonably likely to elicit an incriminating response and therefore, it did not constitute interrogation.  Accordingly, we conclude that the District Court erred in COL 19.

---

[8]/(...continued)
(quoting <u>United States v. Payne</u>, 954 F.2d 199, 202 (4th Cir. 1992))."  <u>United States v. Berckmann</u>, 2018 WL 1527824, *14 (D. Haw. Mar. 28, 2018) (Order).

V.    CONCLUSION

For these reasons, the June 3, 2019 Judgment is affirmed in part and vacated in part.  This case is remanded to the District Court for further proceedings.

DATED: Honolulu, Hawai'i, June 4, 2020.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Allen M. Kaneshiro,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge